# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 04 B 31669 |
| CMGT, INC., | ) | Chapter 7 |
| | ) | Judge John H. Squires |
| Debtor. | ) | |
| | ) | |
| DAVID E. GROCHOCINSKI, Trustee, | ) | |
| | ) | Adversary No. 07 A 00838 |
| Plaintiff, | ) | |
| | ) | |
| SPEHAR CAPITAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

These matters come before the Court on the motion of Spehar Capital, LLC ("Spehar")

for summary judgment and the cross-motion of David E. Grochocinski, the Chapter 7 Trustee for

the estate of CMGT, Inc. (the "Trustee"), for summary judgment pursuant to the Federal Rule of

Bankruptcy Procedure 7056, which incorporates by reference Federal Rule of Civil Procedure 56,

on the amended complaint filed by the Trustee and Spehar's counterclaim.   For the reasons set

forth herein, the Court denies both motions.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and

Internal Operating Procedure 15(a) of the United States District Court for the Northern District

of Illinois.  They are core proceedings under 28 U.S.C. § 157(b)(2)(A), (K), and (O).

-2-

## II. FACTS AND BACKGROUND

On March 18, 2004, Spehar obtained a judgment in the amount of $17,045,780 and a permanent injunction against CMGT, Inc. ("CMGT") in the Superior Court of the State of California. (Spehar Mot. for Sum. J. Ex. No. 1 ¶ 5.) On March 31, 2004, the judgment was domesticated in Illinois, in the County of Dupage, Eighteenth Judicial Circuit. (Spehar Mot. for Sum. J. Ex. No. 2.) On April 7, 2004, Spehar filed a citation notice in the Circuit Court of the Eighteenth Judicial Circuit.[1] (First. Am. Compl. Ex. No. 1.) The person named in the citation notice was "Louis J. Franco, President and CEO, CMGT, Inc." (*Id.*) Exhibit A to the citation notice was a citation to discover assets issued to "Louis J. Franco, President/CEO, c/o CMGT, Inc." (*Id.*) On April 7, 2004, Spehar filed a second citation notice in the Circuit Court of the Eighteenth Judicial Circuit directed to "CMGT, Inc., c/o Louis J. Franco, President/CEO." (Spehar Mot. for Sum. J. Ex. No. 5.) Exhibit A to the second citation notice was a citation to discover assets issued to "CMGT, Inc., c/o Louis J. Franco, President/CEO." (*Id.*) The citation notices and citations to discover assets are collectively referred to herein as the "Citations to Discover Assets." At the heart of this dispute is whether the service of the Citations to Discover Assets on Louis J. Franco ("Franco") and on the Delaware Secretary of State by Spehar resulted in the attachment of a statutory lien on CMGT's personal property as Spehar claims, or whether the service was ineffective to impose a lien on CMGT's personal property as the Trustee asserts. *See* 735 ILL. COMP. STAT. 5/2-1402(a) & (m).

---

[1] Citation proceedings are among the various post-judgment methods used in Illinois to enforce and collect judgments. 735 ILL. COMP. STAT. 5/2-1402; ILL. SUP. CT. R. 277(b).

-3-

The timing of service on Franco is important because on September 19, 2003, Franco resigned as president and chief executive officer of CMGT via electronic mail. (First. Am. Compl. ¶ 11; First. Am. Answer ¶ 11.) On April 10, 2004, Franco referenced his resignation from CMGT in a letter to its investors. (First. Am. Compl. Ex. No. 2.) On May 7, 2004, Franco appeared pursuant to the Citations to Discover Assets. (First. Am. Compl. ¶ 14; First. Am. Answer ¶ 14.) Exhibit 11 at the Citation to Discover Assets hearing was the April 10, 2004 letter written by Franco that referenced his resignation. (First. Am. Compl. Ex. No. 2.) During his examination at the hearing, Franco told CMGT's counsel that he had resigned from CMGT in September 2003, and counsel so advised CMGT's shareholders. (First. Am. Compl. Ex. No. 3-Transcript of Citation to Discover Assets Hearing, 53:19-54:9.) A private process server has averred that his firm served the Delaware Secretary of State as CMGT's registered agent with Spehar's Citation to Discover Assets and Notice of Citation on April 12, 2004. (Aff. of Kevin Dunn ¶ 5.) Exactly what documents were allegedly served is not at all clear. In contrast, the Trustee has averred that he searched the records of the Delaware Secretary of State and learned that Spehar apparently had not served its Citation to Discover Assets in Delaware. (Spehar Mot. for Sum. J. Ex. No. 27–Trustee Aff. ¶ 11.)

On August 25, 2004, Spehar filed an involuntary Chapter 7 bankruptcy petition against CMGT. Thereafter, on September 15, 2004, the Court entered an order for relief under Chapter 7. The Trustee was appointed on September 21, 2004. On June 14, 2005, the Trustee and Spehar entered into a letter agreement (the "Letter Agreement") whereby Spehar agreed to loan money to CMGT's bankruptcy estate. (Spehar Mot. for Sum. J. Ex. No. 16.) The Letter Agreement contained a provision that stated that the Trustee would "take all necessary or appropriate actions

-4-

to void the UCC-1 financing statements or other liens that CMGT's shareholders or persons

otherwise affiliated filed with the Secretary of State Illinois [sic] on or about 12/18/2003." (*Id.*

¶ 2b.) The Letter Agreement does not address the priority of Spehar's lien claim.

On July 15, 2005, the Trustee filed an application to enter into post-petition secured

financing and other relief (the "Financing Motion"). (First. Am. Answer Ex. A.) The Financing

Motion informed the Court that Spehar was providing post-petition financing for a potential

malpractice action (the "Malpractice Action") against Mayer, Brown, Rowe & Maw ("Mayer,

Brown"), professionals who had rendered services to CMGT. As part of the agreement, Spehar

was to share with CMGT's estate in any recovery made in the Malpractice Action. The Financing

Motion stated in pertinent part as follows:

> Spehar . . . is the holder of a judgment against . . . [CMGT] in the
> sum of $17,045,780.00 plus interest and costs. . . . The judgment
> was duly registered in the Circuit Court of the 18th Judicial
> Circuit, DuPage County. . . . A citation to discover assets was
> issued [by Spehar] and served upon the former president of . . .
> [CMGT], Louis Franco. . . . To the extent that assets are available
> in the matter, Spehar . . . by virtue of the citation to discover assets
> which was served upon . . . [CMGT] more than 90 days prior to
> the filing of the petition has a valid perfected lien.

(*Id.* ¶¶ 2 & 3.)

After a hearing on the Financing Motion, the Court entered an order submitted and

prepared by counsel for the Trustee on September 2, 2005 (the "Financing Order"). (First. Am.

Answer Ex. B.) The Financing Order provided that Spehar's advances to fund the Malpractice

Action would be collateralized and repaid from the estate's recovery in that litigation and

specifically recited and ordered that "[b]y virtue of its Citation to Discover Assets, Spehar has a

valid and perfected lien on the proceeds of any such recovery [from the Malpractice Action]."

-5-

(*Id.* ¶ 6.) Further, the Financing Order stated that "[t]he Trustee shall take all reasonable and appropriate actions to void all liens that are asserted to be superior to Spehar's valid and perfected lien in CMGT's assets. . . ." (*Id.* ¶ 8.)

On March 22, 2006, Spehar filed a proof of claim in CMGT's bankruptcy case for a secured amount of $17,045,780 based on the Citations to Discover Assets. (First. Am. Compl. Ex. No. 4.) Thereafter, on April 10, 2006, Spehar filed an amended proof of claim alleging a secured claim in the sum of $13,427,560 based on the Citations to Discover Assets, and an unsecured nonpriority claim in the amount of $3,618,220. (First. Am. Compl. Ex. No. 5.) On August 28, 2006, CMGT's estate filed the Malpractice Action against Mayer, Brown. (First. Am. Compl. ¶ 46; First Am. Answer ¶ 46.) That litigation is currently pending in the United States District Court for the Northern District of Illinois (06 C 5486).

On August 30, 2007, the Trustee filed the instant adversary proceeding. Thereafter, on October 5, 2007, the Trustee filed a first amended complaint (the "amended complaint"). Count I of the four-count amended complaint asserts that the Citation to Discover Assets was invalid under Illinois law because Franco had resigned from CMGT and did not have actual or apparent authority to act on behalf of or bind CMGT. As a result, the Trustee contends that Spehar does not have a valid lien against any assets of CMGT pursuant to the Citation to Discover Assets.

Under Count II of the amended complaint, the Trustee alleges that on May 7, 2004, the Malpractice Action had not been commenced by CMGT, and thus, even if the Citation to Discover Assets was valid, any claim of CMGT against Mayer, Brown was beyond the scope of, not covered by, and not subject to the Citation to Discover Assets. The Trustee maintains that if the Citation to Discover Assets is determined to be valid, the scope of the Citation is limited,

-6-

pursuant to 11 U.S.C. § 362, to the assets of CMGT that were within the scope of the Citation as of August 25, 2004, the date the involuntary Chapter 7 bankruptcy petition was filed by Spehar.

Count III of the amended complaint objects under 11 U.S.C. §§ 502(a) and 704(a)(5) to the proof of claim filed by Spehar. According to the Trustee, the basis for Spehar's secured component of its claim is the lien created by the Citation to Discover Assets. The Trustee argues that if the Citation to Discover Assets is determined to be valid, Spehar does not have a secured claim with respect to any of the proceeds from the Malpractice Action because as of August 25, 2004, any claim of CMGT against Mayer, Brown was a potential chose in action beyond the scope of, not covered by, and not subject to the Citation to Discover Assets.

Count IV of the amended complaint asserts that pursuant to Illinois law and 11 U.S.C. § 362, Spehar does not have any interest in the proceeds from the Malpractice Action pursuant to the Financing Order beyond Spehar's post-petition capital advances. Specifically, the Trustee alleges that the Financing Order provides for Spehar's lien on the proceeds of the Malpractice Action. According to the Trustee, the lien claim of Spehar was never valid. The Trustee further contends that even if the lien was valid, on August 25, 2004, when the involuntary petition was filed, and on September 2, 2005, when the Court entered the Financing Order, the Malpractice Action was a potential chose in action beyond the scope of, not covered by, and not subject to the Citation to Discover Assets. The Trustee argues that pursuant to paragraphs 6 and 7 of the Financing Order, Spehar does not have any interest in the proceeds of the Malpractice Action beyond Spehar's post-petition monetary advances to CMGT's estate.

Spehar filed an amended answer to the amended complaint as well as a counterclaim. Spehar alleges breach of contract by the Trustee, denies that the Citation to Discover Assets was

-7-

invalid, and asserts that Franco had authority to act on behalf of CMGT. Spehar admits that on

September 19, 2003, Franco resigned as president and chief executive officer of CMGT, but

contends that Franco continued to act with apparent authority and represented that he was

CMGT's president and/or chief executive officer. (First. Am. Answer ¶ 11.) Spehar disputes the

Trustee's assertions in his amended complaint that Franco was not the president, chief executive

officer, employee, or agent of CMGT on May 7, 2004, the time the Citation to Discover Assets

was served on him, (*Id.* ¶ 13), and that when he appeared pursuant to the Citation to Discover

Assets, Franco was not the president, chief executive officer, employee, or agent of CMGT. (*Id.*

¶ 15.) Most importantly, Spehar denies that it did not properly serve the Citation to Discover

Assets on CMGT. (*Id.* ¶ 18.)

In its counterclaim, Spehar alleges that the Trustee induced it to loan money to CMGT's

estate by promising that Spehar would have a valid pre-petition secured claim against the estate

in the sum of $17,045,780. Spehar alleges that the Trustee breached his agreement with Spehar

to allow it treatment as a secured claim holder. Spehar contends that the Financing Motion and

the Financing Order constitute an admission by the Trustee that Spehar has a valid pre-petition

claim of $17,045,780 plus interest and costs; that repayment of that amount is secured by a lien

against the estate created by the service of the Citation to Discover Assets on Franco; and the lien

created by the Citation to Discover Assets extends to the Malpractice Action and its proceeds.

The Trustee, on the other hand, argues that Spehar misrepresented that it had a valid and

perfected lien on CMGT's assets. (Spehar Mot. for Sum. J. Ex. No. 27–Trustee Aff. ¶ 4.) The

Trustee submitted an affidavit in support of his position. Specifically, the Trustee avers that after

he was appointed Trustee of CMGT's estate, Spehar approached him and advised that CMGT had

-8-

a cause of action for malpractice against Mayer, Brown, and offered to fund the litigation. (*Id.* ¶ 3.) According to the Trustee, Spehar indicated that it held a lien claim against CMGT based on a judgment; the judgment had been registered in Illinois; and the lien had been perfected through service of a Citation to Discover Assets against CMGT in April 2004. (*Id.* ¶ 4.) The Trustee's investigation revealed that Spehar held a judgment against CMGT, and that the judgment had been recorded with the Delaware Secretary of State–the state of CMGT's incorporation. (*Id.* ¶ 5.) The Trustee avers that he relied on Spehar's assertion that the Citation to Discover Assets had been properly served on CMGT. (*Id.* ¶ 6.) Because Spehar took the position that Franco had resigned as president of CMGT before December of 2003, the Trustee states that he assumed the Citation to Discover Assets had been properly served on the Delaware Secretary of State. (*Id.*)

The Trustee and Spehar negotiated an agreement that was presented to the Court and embodied in the Financing Motion in July 2005. (*Id.* ¶ 7.) Pursuant to his agreement with Spehar, the Trustee was to sell certain software and intangible assets to Spehar, and file the Malpractice Action if recommended by special counsel. (*Id.*) Further, the Trustee agreed to take reasonable and appropriate action to void the alleged secured liens asserted by parties who had provided funds for CMGT's operations. (*Id.*) The Trustee states that his agreement with Spehar was the product of joint negotiations. (*Id.* ¶ 8.) He further maintains that as he read the term "void" in their agreement, there was nothing that precluded him from following his customary procedures as a case trustee and preserving voided liens for the benefit of CMGT's estate under 11 U.S.C. § 551. (*Id.*)

Although the Financing Motion and the Financing Order are silent on § 551, both state that Spehar had a valid and perfected lien on the proceeds of the Malpractice Action. According

-9-

to the Trustee, he interpreted that language as a recital rather than a limitation on his actions in fulfilling his duties as Trustee. (*Id.*) The Trustee avers that he did not learn that Spehar's lien was void until after the entry of the Financing Order, when Spehar objected to his settlement with the parties who had provided funds for CMGT's operations. (*Id.* ¶ 10.) It was at or around that time, according to the Trustee, that he searched the records of the Delaware Secretary of State and learned that Spehar had not served a Citation to Discover Assets in Delaware (on CMGT's corporate registered agent). (*Id.* ¶ 11.) Further, the Trustee avers that it is inconsistent with his duties as a case trustee to allow secured status to a lien claim based on a citation to discover assets that was not properly served. (*Id.* ¶ 12.) Finally, in the exercise of his duties under 11 U.S.C. § 704(5), the Trustee filed the instant adversary proceeding to determine the validity, extent, and priority of Spehar's lien. (*Id.*)

On January 16, 2008, Spehar filed a motion for judgment on the pleadings. Spehar argued that the amended complaint should be denied in its entirety under the doctrines of judicial estoppel, promissory estoppel, and the law of the case. Spehar further asserted that judgment should be entered against the Trustee on the breach of contract counterclaim. On March 12, 2008, this Court entered an order denying Spehar's motion because material issues of fact existed as to whether Spehar had a valid lien on CMGT's personal property via its service of the Citations to Discover Assets on Franco. *Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.)*, 384 B.R. 497 (Bankr. N.D. Ill. 2008). This Court found that judicial estoppel did not bar the amended complaint because issues of fact existed as to whether the Trustee's position on the status of Spehar's lien claim was the product of mistake, and, more importantly, in entering the Financing Order the Court did not determine the priority of the lien, as the Financing Motion was

-10-

uncontested and the recital was the product of a stipulation between the parties. *Id.* at 507-08.

This Court also found that promissory estoppel did not bar the amended complaint because

material issues of fact existed as to whether the recitations contained in the Financing Motion and

Financing Order constituted an unambiguous promise by the Trustee, and whether Spehar

reasonably and justifiably relied on any such promise to its detriment. *Id.* at 508. Finally, this

Court found that the law of the case doctrine did not bar the complaint because the Court

entertained the Financing Motion on the parties' stipulation, which simply recited that Spehar had

perfected its lien, and the Court did not make any independent findings or a determination of the

validity, extent, or priority of the lien. *Id.* at 509. On March 28, 2008, Spehar filed a motion to

reconsider the denial of the motion for judgment on the pleadings and a motion for relief from the

judgment or order. Both motions were denied by this Court.

On May 23, 2008, Spehar filed the instant motion for summary judgment on all counts

of the amended complaint and Spehar's counterclaim. Spehar argues that service on Franco was

effective because Franco was an agent of CMGT at the time of service. Spehar also takes the

position that service was made directly on CMGT through a second citation notice issued to

"CMGT, Inc. c/o Louis J. Franco, President /CEO." Spehar alternatively argues that even if

the service on Franco and CMGT is deemed ineffective, proper substitute service was made

through the Delaware Secretary of State. The Trustee takes the position that the Citations to

Discover Assets were not validly served because Franco had resigned as CMGT's president

before the Citations were served. Therefore, a Citation to Discover Assets should have been

served on the Delaware Secretary of State in accordance with 10 DEL. CODE § 3114 which

states, "[s]ervice of process shall be effected by serving the registered agent (or, if there is none,

-11-

the Secretary of State). . . ." The Trustee argues that Spehar has not established valid service of a Citation to Discover Assets on the Delaware Secretary of State.

Spehar additionally contends that it is entitled to summary judgment by promissory estoppel because the terms of the Financing Order and Letter Agreement created contractual obligations which prevent the Trustee from challenging the validity and perfection of Spehar's lien. Spehar argues that the Trustee made unambiguous promises to recognize Spehar's lien on the proceeds of any recovery in the Malpractice Action. According to Spehar, the Trustee was also obligated to "void" alleged secured liens asserted by parties who had provided funds for CMGT's operations instead of "avoiding" them pursuant to § 551.

On August 15, 2008, the Trustee filed a cross-motion for summary judgment on Count II of the amended complaint and Spehar's counterclaim. The Trustee argues that he is entitled to summary judgment on Spehar's counterclaim because he has performed his obligations to Spehar under the Financing Order. In support of this argument, the Trustee submitted an affidavit. (Resp. to Mot. for Sum. J. Ex. C.) Specifically, the Trustee states that he filed the Malpractice Action and brought actions under 11 U.S.C. § 547(b) to avoid the alleged security interests of parties that advanced funds to finance CMGT's operations. (*Id.* ¶¶ 35 & 36.) The Trustee maintains that he did not believe there was anything in the parties' understanding that would preclude him from preserving the liens for the benefit of the estate pursuant to § 551. (*Id.* ¶ 28.)

The Trustee additionally asserts that at the time Spehar served its Citations to Discover Assets, the Malpractice Action was only a potential chose in action. The Trustee argues that because a citation lien cannot attach to a potential chose in action for malpractice as matter of

-12-

law, the scope of the Citations to Discover Assets is limited to the assets of CMGT as of August 25, 2004, the date the involuntary Chapter 7 bankruptcy petition was filed by Spehar. Spehar contends that the Trustee's arguments are barred under Illinois contract law and laches.

### III. APPLICABLE STANDARDS

#### A.    Summary Judgment

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R CIV.P. 56(c). *See also Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th Cir. 2003).

The primary purpose of granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute, *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmens Fed. Savs. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

-13-

On a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted). Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation omitted).

In 1986, the United States Supreme Court decided a trilogy of cases that encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322; *Matsushita*, 475 U.S. at 585-86.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 666-67 (7th Cir. 2005); *Parkins v. Civil Constructors of Ill.*, Inc., 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248; *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002). "Factual disputes that are irrelevant or unnecessary will not be counted.'" *Fritcher*, 301 F.3d at 815 (*quoting Anderson*, 477 U.S. at 248). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue

-14-

for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (*quoting* FED.R.CIV.P. 56(c)). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 587; *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990). The manner in which a party can make this showing depends upon which party will bear the burden of persuasion at trial.

If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production either by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 213 (Bankr. N.D. Ill. 1993). When a defendant moves for summary judgment, the plaintiff has the obligation to make out its prima facie case. *Fischer Inv. Capital,*

-15-

*Inc. v. Cohen (In re Cohen)*, 334 B.R. 392, 397 (Bankr. N.D. Ill. 2005). The failure of the plaintiff to adduce evidence on each element of the claim results in the entry of summary judgment for the defendant. *Id.* (*citing Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 694 (7th Cir. 2005)).

The parties have filed cross-motions for summary judgment. The motions must be ruled on independently and must be denied if there are genuine issues of material fact. *ITT Indus. Credit Co. v. D.S. Am., Inc.*, 674 F. Supp. 1330, 1331 (N.D. Ill. 1987). Cross-motions for summary judgment do not require the court to decide the case on the motions; the court can deny both motions if both parties have failed to meet the burden of establishing that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. *Id.*; *Pettibone Corp. v. Ramirez (In re Pettibone Corp.)*, 90 B.R. 918, 922 (Bankr. N.D. Ill. 1988). Also, cross-motions for summary judgment do not warrant the granting of summary judgment where the decision of a question of law depends upon inquiry into surrounding facts and circumstances, and in such instance, summary judgment should be refused until such facts and circumstances have been sufficiently developed to enable the court to be reasonably certain that it is making the correct determination on the question of law. *Nugent v. United States*, 136 F. Supp. 875, 878 (N.D. Ill. 1955). Thus, on their respective motions, Spehar and the Trustee each bear the burden of demonstrating the absence of material factual issues and establishing that judgment should be entered in its favor as a matter of law. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1998). "All inferences are construed in favor of the party against whom the motion under consideration is made." *Solow v. United States (In re Johnson Rehab.*

-16-

*Nursing Home, Inc.*), 239 B.R. 168, 172 (Bankr. N.D. Ill. 1999) (*citing Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996)).

Local Bankruptcy Rule 7056-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment motions, was modeled after LR 56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR 56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056-1. Pursuant to Local Bankruptcy Rule 7056, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1B. Both parties filed 7056-1 statements that substantially comply with the requirements of Local Rule 7056. They contain numbered paragraphs setting out assertedly uncontested facts with specific reference to parts of the record. Additionally, the parties furnished other supporting materials relied upon.

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond ("7056-2 statement") to the movant's 7056-1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and

-17-

to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" Local Bankr.R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056-1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056-2B. The parties filed the requisite 7056-2 statements and other supporting materials upon which they rely. Local Bankr.R. 7056-2. The Court notes in passing that, in many instances, the respective 7056-2 statements and responses filed by the parties do not directly admit or deny each and every specific allegedly undisputed material fact. The parties argue retrospectively and sometimes equivocate rather than respond. This makes the proper determination of the questions of law more difficult and problematic for the Court. As a result, this tends to indicate a greater likelihood of material factual disputes between the parties.

**B.      Extent and Validity of Liens**

State law governs the secured interests asserted by the parties in bankruptcy. *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. . . . The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests. . . ."); *Worthen Bank & Trust Co., N.A. v. Hilyard Drilling Co. (In re Hilyard Drilling Co.)*, 840 F.2d 596, 599 n.4 (8th Cir. 1988) (*citing Freeland v. Chaseley's Foods, Inc. (In re Chaseley's Foods, Inc.)*, 726 F.2d 303, 307 (7th Cir. 1983)). Thus, the Court "look[s] to state law to ascertain what property the debtor owned immediately preceding the time of bankruptcy; what liens thereon, if any, then existed; the character thereof; and the order of priority among the respective creditors holding such liens." *Commercial Credit Co. v. Davidson (In re Chancellor)*, 112 F.2d 54, 55 (5th Cir. 1940).

-18-

Accordingly, the extent and validity of Spehar's alleged lien on CMGT's assets is determined

by state law. In this matter, Illinois is the applicable state law.

## IV. DISCUSSION

### A. Whether Service of the Citations to Discover Assets on Franco and the Delaware Secretary of State was Valid

Under Illinois law, all "supplemental proceedings shall be commenced by the service

of a citation issued by the clerk." 735 ILL. COMP. STAT. 5/2-1402(a). A judgment becomes a

lien when served in accordance with § 1402(a). 735 ILL. COMP. STAT. 5/2-1402(m).

Specifically, § 1402(m) provides in pertinent part as follows:

> The judgment or balance due on the judgment becomes a lien
> when a citation is served in accordance with subsection (a) of
> this Section. The lien binds nonexempt personal property,
> including money, choses in action, and effects of the judgment
> debtor as follows:
>> (1) When the citation is directed against the
>> judgment debtor, upon all personal property
>> belonging to the judgment debtor in the
>> possession or control of the judgment debtor or
>> which may thereafter be acquired or come due to
>> the judgment debtor to the time of the disposition
>> of the citation.

735 ILL. COMP. STAT. 5/2-1402(m)(1).

"The lien is considered perfected as of the date of service of the citation." *Cacok v. Covington*,

111 F.3d 52, 54 (7th Cir. 1997).

In Illinois, a private corporation is served by leaving process with "its registered agent

or any officer or agent of the corporation found anywhere in the State. . . ." 735 ILL. COMP.

STAT. 5/2-204. "Where service of process is not carried out in accordance with the manner

-19-

provided by law it is invalid, no jurisdiction over the person of the defendant is acquired, and a default judgment rendered against the defendant is void." *Gocheff v. Breeding*, 368 N.E.2d 982, 983 (Ill. App. Ct. 1977).

In Counts I, III, and IV of the amended complaint, the Trustee requests a finding that Spehar is not a secured creditor because its alleged lien is based on a citation to discover assets that was not validly served on CMGT. Spehar contends that the amended complaint incorrectly reflects that only one Citation to Discover Assets and Citation Notice was served on Franco. The parties do not dispute that on April 7, 2004, the Clerk of the Circuit Court of the Eighteenth Judicial Circuit issued two Citations to Discover Assets. (Trustee 7056-2 Statement ¶ 3.) One was issued to Franco as "President/CEO of CMGT" and the other was issued to "CMGT, Inc. c/o Louis J. Franco, President/ CEO." (*Id.*) Both Citations were addressed to "2S.647 White Birch Lane, Wheaton, IL 60187." (*Id.*) Spehar argues that it is entitled to summary judgment because Franco was an agent of CMGT at the time of service and the second Citation was served directly on CMGT at its "corporate address." Spehar also takes the position that even if service on Franco and CMGT is deemed ineffective, proper substitute service was made through the Delaware Secretary of State. The Court denies Spehar's motion for summary judgment on Counts I, III, and IV of the amended complaint because material issues of fact remain with respect to whether Spehar had a valid lien on CMGT's personal property via the service of the Citations to Discover Assets on Franco and the service on the Delaware Secretary of State. The Court will address each of the Spehar's arguments in turn.

Spehar first argues that Franco's actions and testimony demonstrate he had the authority to act as agent on behalf of CMGT at the time he was served with the Citations to Discover

-20-

Assets. The Trustee maintains that Franco had resigned as CMGT's president before the Citation was served, and Franco was not the president, CEO, employee, or agent of CMGT when service upon "Louis J. Franco" was effectuated.

An agent is "'one who undertakes to manage some affairs to be transacted for another by his authority, on account of the latter, who is called the principal, and to render an account.'" *Brunswick Leasing Corp. v. Wis. Cent., Ltd.*, 136 F.3d 521, 526 (7th Cir. 1998) (*quoting Wargel v. First Nat'l Bank of Harrisburg*, 460 N.E.2d 331, 334 (Ill. App. Ct. 1984)). The right to control the method or manner of accomplishing a task by the alleged agent, as well as the agent's ability to subject the principal to liability is the test for an agency relationship. *Id.* To bind the principal, the agent must have either actual or apparent authority, or the principal must ratify the agent's unauthorized actions. *Anetsberger v. Metro. Life Ins. Co.*, 14 F.3d 1226, 1234 (7th Cir. 1994). Actual authority exists if "the principal explicitly grants the agent the authority to perform a particular act." *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). "'Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf.'" *Id.* at 1065 (*quoting Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 577 N.E.2d 1344, 1350 (Ill. App. Ct. 1991)). The "words and conduct" of the principal establish the agency relationship; the alleged agent's words and conduct are not sufficient. *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004). The burden of establishing the existence of an agency relationship is on the party asserting its existence. *Matthews Roofing Co. v. Cmty. Bank & Trust Co. of Edgewater*, 550 N.E.2d 1189, 1193 (Ill.

-21-

App. Ct. 1990). "Ultimately, the existence of an agency relationship is a question of fact." *United States v. Koenig*, 856 F.2d 843, 848 fn.1 (7th Cir. 1988).

In support of its argument that Franco continued to act on behalf of CMGT after his resignation, Spehar cites a document signed by Franco on Dec 1, 2003 using the title "President & CEO" of CMGT (Spehar Mot. for Sum. J. Ex. No. 13); a letter sent by Franco to CMGT shareholders on April 10, 2004 describing the mailing as "his last official act" (Spehar Mot. for Sum. J. Ex. No. 9); and Franco's testimony at the Citation hearing that "my resignation was kind of a loose thing" and after September 19, 2003, he "tried to stay available to wrap up whatever affairs needed to be wrapped up." (Spehar Mot. for Sum. J. Ex. No. 8.) Spehar also alleges that Franco approved CMGT corporate tax returns and corporate notices on a CMGT website. (Spehar 7056-1 Statement ¶ 9.) The Trustee admits that Franco sent the April 2004 letter to CMGT, but notes that the letter also stated: "As Ronald B. Given of Mayer, Brown, Rowe, & Maw indicated to you in his email dated September 19, 2003, I have resigned." (Trustee 7056-2 Statement ¶ 9.) The Trustee denies that Franco approved any corporate tax returns or notices after his resignation. (*Id.*) The Court concludes that disputed issues of material fact exist regarding whether Franco had the continued authority to act on behalf of or legally bind CMGT, and if so, to what extent at the time the Citations to Discover Assets were served after his resignation in 2003. Spehar has not satisfied its burden of establishing the existence of an agency relationship between Franco and CMGT or the extent of any authority Franco retained after his resignation as a matter of undisputed fact.

Spehar additionally argues that service was made "directly" on CMGT through a second Citation to Discover Assets and Citation Notice addressed to "CMGT, Inc. c/o Louis J. Franco,

-22-

President/ CEO" at "2 South 647 White Birch Lane, Wheaton, Illinois." Spehar contends that

at the time the second notice was issued, this was CMGT's corporate address. In support of this

argument it cites only to an August 26, 2003 letter from Franco with the address listed as a

"Chicago Corporate Office" and Franco's testimony referring to the address as a "prior business

address." (Spehar Mot. for Sum. J. Ex. Nos. 7 & 8.) This does not establish that in fact in April

2004, CMGT maintained such a corporate address in Wheaton, Illinois. Furthermore, Franco

also testified that "2 South 647 White Birch Lane, Wheaton, Illinois" was his "home address."

(Spehar Mot. for Sum. J. Ex No. 8.) Spehar admits that the second Citation was issued to

"CMGT, Inc. c/o Louis J. Franco" and served on Franco, but fails to point to any authority

which demonstrates that this type of "direct service" complies with 735 ILL. COMP. STAT.

5/2-204 unless Franco was "an agent or officer" of CMGT at the time of service

Finally, Spehar alleges that it served a third Citation to Discover Assets and Notice of

Citation on the Delaware Secretary of State on April 12, 2004, and then on April 13, 2004, the

Delaware Secretary of State forwarded the citation to "CMGT c/o Louis J. Franco." (Spehar

7056-1 Statement ¶ 6.) Spehar contends that this constitutes proper substitute service under 10

DEL. CODE § 3114 which states "[s]ervice of process shall be effected by serving the registered

agent (or, if there is none, the Secretary of State). . . ." A copy of a service of process log

obtained from the Delaware Secretary of State indicates that its office received documents from

Spehar on April 12, 2004, and these documents were forwarded to CMGT on April 13, 2004.

(Spehar Mot. for Sum. J. Ex. No. 9.) Spehar's Exhibit 9, however, consists only of a letter of

transmittal referencing "summons and complaint" served, not the Citations. (*Id.*) The actual

documents or true copies have not been supplied. Franco testified that he had received the

-23-

Citations to Discover Assets and copies "of the same thing from the State of Delaware."
(Spehar Mot. for Sum. J. Ex. No. 8.) However, the Delaware Secretary of State informed
Spehar that it could not determine what documents were actually received and served on CMGT
because its records were destroyed pursuant to Delaware law. (Spehar Mot. for Sum. J. Ex. No.
12.) This raises the specter of what exactly the Delaware Secretary of State was served with–a
properly issued citation or something else.

The Trustee admits that documents were filed by Spehar with the Delaware Secretary
of State but denies that the Secretary of State actually received a citation to discover assets or
notice of citation. (Trustee 7056-2 Statement ¶ 6.) Additionally, the Trustee asserts that Spehar
did not comply with Illinois law because a citation was not "issued by the clerk" pursuant to §
1402(a). The Trustee checked the state court files and found that a citation directed to the
Delaware Secretary of State did not issue from the Clerk of the Illinois State Court. (Resp. to
Mot. for Sum. J. Trustee Aff. ¶ 40.) Thus, material issues of fact exist regarding exactly what
was served on the Delaware Secretary of State and whether the same complied with the
requirements of Illinois law for the effective service of a validly issued citation. Because
Spehar has not established valid service on CMGT or the Delaware Secretary of State as a
matter of undisputed fact, Spehar is not entitled to summary judgment. Genuine issues of
material fact exist with respect to whether service of the Citations to Discover Assets on CMGT
was proper and sufficient and whether Spehar's claim should be afforded secured lien status.

## B.   Whether Spehar is Entitled to Summary Judgment Under the Doctrine of Promissory Estoppel

Spehar alternatively argues that even if the Citations were not properly served, Spehar is entitled to summary judgment through the doctrine of promissory estoppel. Promissory estoppel is an equitable tool that allows a court to infer a contract where none would otherwise exist. *Genin, Trudeau & Co., Ltd. v. Integra Dev. Int'l*, 845 F.Supp. 611, 616 (N.D. Ill. 1994). A claim for promissory estoppel can succeed only where all the elements of a contract exist, but consideration is lacking. *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005). To prevail on a claim for promissory estoppel, a party must prove each of the following elements: (1) an unambiguous promise; (2) reasonably and justifiable reliance by the party to whom the promise was made; (3) the reliance was expected and foreseeable by the promissor; and (4) the promisee relied on the promise to its detriment. *Id.* (*quoting Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990)); *Fischer v. First Chi. Capital Mkts., Inc.*, 195 F.3d 279, 283 (7th Cir. 1999). "'Promissory estoppel is not a doctrine designed to give a party. . .a second bite at the apple in the event that it fails to prove a breach of contract.'" *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869-70 (7th Cir. 1999) (*quoting Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984)).

The Court concludes that Spehar has not established the necessary elements of promissory estoppel. Material issues of fact remain as to whether the recitations contained in the Financing Motion and Financing Order constitute unambiguous promises by the Trustee as claimed by Spehar or whether they were recitals as claimed by the Trustee. However, because the Financing Motion and Order were silent regarding lien preservation for the benefit of the

-25-

estate under §551, extrinsic evidence as to the parties' intent on this issue is necessary at this stage. The issue of whether Spehar reasonably and justifiably relied to its detriment on any alleged promise made by the Trustee regarding its lien is a question of fact that cannot be determined on the present record before the Court. Consequently, Spehar's motion for summary judgment cannot be granted on the basis of its claim for promissory estoppel.

### C.    Whether the Trustee has Complied with the Terms of the Letter Agreement and Financing Order

In its counterclaim, Spehar alleges that in return for financing of the Malpractice Action, the Trustee made unambiguous promises to recognize Spehar's status as a secured lien holder and void alleged liens held by CMGT investors. Spehar maintains that is it entitled to summary judgment because the Trustee breached these obligations by challenging the validity of its lien and avoiding investor liens and preserving them for the benefit of the estate pursuant to § 551. The Trustee, however, alleges that Spehar misrepresented that it held a valid and perfected lien on CMGT's assets. The Trustee has brought a cross-motion in this proceeding asserting that he is entitled to summary judgment on Spehar's counterclaim because the Trustee has allegedly performed his obligations under the Financing Order.

The Court concludes that material issues of fact remain as to whether the terms of the Financing Motion constitute admissions by the Trustee that Spehar would have a valid pre-petition secured claim against CMGT's assets. The Trustee maintains that he never promised not to challenge Spehar's lien because he was mistaken as to the secured status of Spehar's claim when he filed the Financing Motion and requested the Court to sign the Financing Order. (Resp. to Mot. for Sum. J. Trustee Aff. ¶ 27.) The Court is unable to determine the validity of

-26-

representations made by Spehar or the Trustee during the negotiations of the Letter Agreement, and at this stage weigh such evidence. Thus, an issue of fact exists as to whether the Trustee's position on the status of Spehar's lien claim was the product of mistake and whether any alleged mistake was unilateral or bilateral between the parties. Furthermore, there are genuine issues of fact concerning the parties interpretation of the Trustee's obligations under the Letter Agreement. Spehar argues that both the Letter Agreement and the Financing Order required the Trustee to "void" CMGT investor liens but also admits that it never asked that § 551 not apply. The Trustee contends that the avoidance of liens under § 551 is consistent with the objectives of the Letter Agreement and his customary procedures and duties as Trustee. Both Spehar and the Trustee have failed to satisfy their burden of establishing that there are no genuine issues of fact as to whether the Trustee is in breach of any obligations created by the terms of the Letter Agreement and Financing Order. Therefore, the Court denies both motions for summary judgment on Spehar's counterclaim.

**D.      Whether Spehar has a Valid Lien on the Proceeds of the Malpractice Action**

In Count II of the amended complaint, the Trustee argues that even if Spehar's service of the Citations to Discover Assets was valid, the resulting lien should not extend to any recovery from the Malpractice Action because the Malpractice Action was a "potential" chose of action when the Citations were served. The Trustee has brought a cross-motion arguing that he is entitled to summary judgment on Count II because under Illinois case law, "potential" choses in action may not be subject to a citation to discover assets. The Trustee further argues that CMGT's cause of action for malpractice was a non-assignable claim for legal malpractice

-27-

and the attachment of a citation lien on any recovery from the Malpractice Action would essentially have the same effect as an assignment of a legal malpractice claim.

Under Illinois law, a lien created by the service of a citation to discover assets on a judgment debtor binds the judgment debtor's nonexempt personal property, including choses in action. 735 ILL. COMP. STAT. 5/2-1402(m). A "court may, by appropriate order or judgment . . . [c]ompel the judgment debtor to deliver up, to be applied in satisfaction of the judgment, in whole or in part, . . . choses in action. . . ." 735 ILL. COMP. STAT. 5/2-1402(c)(1). The chose in action must be "capable of delivery and to which his or her title or right of possession is not substantially disputed." 735 ILL. COMP. STAT. 5/2-1402(c)(1).

In *Gonzalez v. Profile Sanding Equipment, Inc.*, a judgment creditor brought a motion for turnover pursuant to § 1402(c)(1) requesting that the trial court deliver "the asset of the potential cause of action" of the judgment debtors against its attorneys for alleged malpractice. 776 N.E.2d 667, 672 (Ill. App. Ct. 2002). The *Gonzalez* court held that the trial court did not abuse its discretion under the "may" requirement of § 1402(c) by refusing to compel the judgment debtor to assign a "potential chose in action" to the judgment creditor. *Id.* at 682. The court defined a "chose in action" as " akin to an instance where a party has a 'cause' for some duty due to him or her, or something similar to 'rights' under a contract or a breach of that contract. In other words, it is not potential or inchoate; rather, it is an issue that has been the subject of litigation or, at the very least, is in the process of being litigated." *Id.* at 680. The court further stated that a chose in action for legal malpractice exists where a defendant-debtor has "alleged that its counsel's conduct was defective in some manner. . . . However, where the putative legal malpractice claim has neither been asserted nor commenced by the defendant-

-28-

debtor, it can only be said that the defendant has a *potential* chose in action." *Id.* Finally, the *Gonzalez* court found that § 1402(c)(1) should not extend to "potential" choses in action because "if the legislature opted to include 'potential chose' in the list of possible assets, it would have done so" and that requiring the turnover of a "potential" chose in action had the same "negative implications of the attorney-client relationship" as an assignment of a malpractice claim. *Id.* at 680, 682.

Illinois courts have held that legal malpractice claims are not assignable. *Brocato v. Prairie State Farmers Ins. Ass'n*, 520 N.E.2d 1200, 1201 (Ill. App. Ct. 1988); *Clement v. Prestwich*, 448 N.E.2d 1039, 1041 (Ill. App. Ct. 1983). These courts reasoned that "sound public policy prohibits the assignment of [legal malpractice] claims since an assignee would be a stranger to the attorney-client relationship, who was owed no duty by the attorney and who suffered no injury from the attorney's actions." *Clement*, 448 N.E.2d at 1041. However, the "creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances. . . ." *Rivan Die Mold Corp. v. Stewart-Warner Corp.*, 325 N.E.2d 357, 361 (Ill. App. Ct. 1975). *See also Nw. Diversified, Inc. v. Desai*, 818 N.E.2d 753, 762 (Ill. App. Ct. 2004) (*quoting Rivan Die Mold*).

Spehar agues that it is entitled to summary judgment on Count II because it bargained for a lien on the proceeds of the Malpractice Action in return for its financing of the Malpractice Action. Spehar contends that the Trustees's arguments based on *Gonzalez* are misapplied. According to Spehar, unlike the "potential" claim in *Gonzalez*, CMGT had actually asserted its malpractice chose in action when the Trustee asked the Court to approve the Financing Order.

-29-

Spehar further argues that the proceeds of the Malpractice Action are personal property of CMGT and "capable of delivery" under § 1402(c)(1). Spehar also asserts that there has been no assignment or turnover of the cause of action for malpractice because the Trustee is the plaintiff in the Malpractice Action.

The Court rejects the Trustee's attempt to summarily apply *Gonzalez* to the case at bar. While *Gonzalez* involved a request for turnover of an asset under § 1402(c)(1), Spehar alleges that it has a lien under § 1402(m)(1). Material issues of fact remain regarding the timing and efficacy of Spehar's service of the Citations to Discover Assets and whether that service perfected any citation lien on CMGT's assets. Therefore, the Court cannot determine whether CMGT's malpractice claim was a "potential" chose in action or actual chose in action at the time the lien was allegedly created. Furthermore, this Court finds that additional issues of fact remain as to whether the Financing Order gave Spehar a contractual lien right on the proceeds of the Malpractice Action. Also, there is a material issue of fact as to whether the attachment of a lien to the proceeds of the Malpractice Action is the equivalent of an assignment of a legal malpractice claim. Summary judgment is not appropriate when further inquiry into the facts of the case is necessary to clarify the application of the law. *See Bank of Am., N.A. v. Outboard Marine Corp. (In re Outboard Marine Corp.)*, Bankr. No. 00 B 37405, Adv. No. 01 A 00471, 2004 WL 848175, *2 (Bankr. N.D. Ill. Apr. 20, 2004).

Finally, Spehar argues the Trustee is barred by the doctrine of laches from challenging the validity of Spehar's lien. (Spehar Resp. to Trustee Cross-Mot. for Sum. J. ¶¶ 11-12.) Laches is an equitable defense that is properly invoked when "unreasonable delay in pressing one's rights . . . prejudices the defendant." *Cook v. City of Chi.*, 192 F.3d 693, 695 (7th Cir.

-30-

1999). In order for laches to apply in a case, the party asserting the defense must establish two

elements: (1) an unreasonable lack of diligence by the party against whom the defense is

asserted; and (2) prejudice arising from the delay. *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733

(7th Cir. 2003); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 620 (7th Cir. 2002); *Hot

Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). A defendant is prejudiced

from delay in asserting a claim where the defendant has changed its position in a way that would

not have occurred if the plaintiff had not delayed. *Hot Wax*, 191 F.3d at 824. The Seventh

Circuit has noted that "'laches is a question of degree'" and that "'if only a short period of time

has elapsed since the accrual of the claim, the magnitude of prejudice required before the suit

should be barred is great.'" *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 795 (7th Cir.

2002) (*quoting Hot Wax*, 191 F.3d at 824). Spehar has not established all the elements of laches

as a matter of undisputed fact. The record shows an absence of evidence concerning whether

an unreasonable and prejudicial delay was caused by the Trustee as Spehar alleges.

Spehar also contends the Trustee's arguments challenging the validity of Spehar's lien

are barred under Illinois contract law, and reasserts the law of the case and judicial and equitable

estoppel defenses previously argued in Spehar's motion for judgment on the pleadings. (Spehar

Resp. to Trustee Cross-Mot. for Sum. J. ¶¶ 4-10, ¶ 13.) At this stage of the litigation, the Court

cannot make a determination regarding the merits of Spehar's defenses because of the disputed

factual issues. However, these defenses may have merit after an evidentiary hearing. Based on

the present record, the Court must deny both motions for summary judgment on Count II of the

amended complaint.

-31-

## V. <u>CONCLUSION</u>

For the foregoing reasons, both motions for summary judgment are denied. The Final Pretrial Order previously entered remains in full force and effect. Trial on this adversary proceeding is set for November 24 and 25, 2008.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: _10/30/8_

_____
John H. Squires
United States Bankruptcy Judge

cc:    See attached Service List

## SERVICE LIST

### David E. Grochocinski, Trustee v. Spehar Capital, LLC
**Adversary Case No. 07 A 00838**

Kathleen M. McGuire, Esq.
Grochocinski Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60462

Michael A. O'Brien, Esq.
O'Brien Law Offices, P.C.
124A S. County Farm Road
Wheaton, IL 60187

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604

Kenneth A. Franklin, Esq.
Rodi Pollock Pettker Christian & Pramov
444 S. Flower Street, 17th Floor
Los Angeles, CA 90071

David E. Grochocinski, Esq.
Grochocinski Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60462