## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | )    Bankruptcy No. 04 B 31669 |
| CMGT, INC., | )    Chapter 7 |
| | )    Judge John H. Squires |
| Debtor. | ) |
| | ) |
| DAVID E. GROCHOCINSKI, Trustee, | ) |
| | )    Adversary No. 07 A 00838 |
| Plaintiff, | ) |
| | ) |
| SPEHAR CAPITAL, LLC, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

These matters come before the Court on the first amended complaint to determine the validity, extent, or priority of claims and interests of Spehar Capital, LLC (the "amended complaint") filed by David E. Grochocinski, the Chapter 7 trustee (the "Trustee") for the estate of CMGT, Inc. ("CMGT") and on the counterclaim filed by Spehar Capital, LLC ("Spehar") against the Trustee alleging breach of contract, promissory estoppel, and laches. The Court has examined the exhibits admitted at trial, considered all trial testimony, and read the briefs submitted by the parties. The Court holds that Spehar has not shown that it has a valid lien on the assets of CMGT. Rather, it has an uncontested, unsecured allowed claim. Consequently, the Trustee is entitled to judgment under Counts I, II, III, and IV of the amended complaint. In addition, the Court grants judgment in favor of the Trustee on the counterclaim. The Court finds that Spehar has not demonstrated that the Trustee breached any obligation to Spehar. Further, the Court concludes that the Trustee's claims are not barred under the doctrines of promissory estoppel or laches.

-2-

## I.  JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  They are core proceedings under 28 U.S.C. § 157(b)(2)(A), (K), and (O).

## II.  FACTS AND BACKGROUND

Previously, this Court issued a Memorandum Opinion in this matter wherein it denied cross motions for summary judgment and set this adversary proceeding for trial.  *Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.)*, Bankr. No. 04 B 31669, Adv. Pro. No. 07 A 00838, 2008 WL 4767434 (Bankr. N.D. Ill. Oct. 30, 2008).  In that Opinion, the Court set forth the undisputed facts as well as the applicable law.  *Id.*  Those findings of facts and conclusions of law are incorporated here by reference.  A trial was held on November 24 and November 25, 2008.  Both the Trustee and Gerry Spehar, president and owner of Spehar, testified.  The Court also heard the testimony of Louis J. Franco ("Franco") and Spehar's former attorney, Stephen Klenda.  Thereafter, the Court took these matters under advisement after receipt of post-trial submissions.

Most of the facts and background are undisputed.  CMGT was incorporated in the State of Delaware on September 23, 1999.  (Spehar Ex. No. 53.)  On March 1, 2002, CMGT was dissolved by the Delaware Secretary of State for non-payment of taxes.  (*Id.*)  CMGT was never authorized to transact business in Illinois.  It was not registered with the Illinois Secretary of State, and it did not have an Illinois office or registered agent.  On March 18, 2004, Spehar obtained a judgment in the amount of $17,045,780 and a permanent injunction against CMGT in the Superior Court of the State of California.  (Stipulation of Facts ¶ 1.)  On March 31, 2004, the

-3-

judgment was domesticated in Illinois in the County of Dupage, Eighteenth Judicial Circuit (the

"Illinois State Court"). (*Id.* ¶ 2.) On April 7, 2004, Spehar filed a citation notice in the Illinois

State Court.[1] (Spehar Ex. No. 34.) The person named in the citation notice was "Louis J. Franco,

President and CEO, CMGT, Inc." (*Id.*) Exhibit A to the citation notice was a citation to discover

assets issued to "Louis J. Franco, President/CEO, c/o CMGT, Inc." (*Id.*) On April 7, 2004,

Spehar filed a second citation notice in the Illinois State Court directed to "CMGT, Inc., c/o Louis

J. Franco, President and CEO." (Spehar Ex. No. 33.) Exhibit A to the second citation notice was

a citation to discover assets issued to "CMGT, Inc., c/o Louis J. Franco, President/CEO." (*Id.*)

The citation notices and citations to discover assets are collectively referred to herein as the

"Citations to Discover Assets." The Citations to Discover Assets were served by Spehar on

Franco at his home at "2 South 647 White Birch Lane, Wheaton, IL 60187." (Stipulation of Facts

¶ 6.) At the heart of this dispute is whether the service of the Citations to Discover Assets by

Spehar resulted in the attachment of a statutory lien on CMGT's personal property as Spehar

claims, or whether the service was ineffective to impose such a lien, as the Trustee asserts.

The timing of service on Franco is important because Franco claims to have resigned as

president and chief executive officer of CMGT via electronic mail on September 19, 2003.

(Spehar Ex. No. 42.) On April 10, 2004, Franco sent copies of the Citations to Discover Assets

and a letter referencing his resignation to "All CMGT Investors." (Spehar Ex. No. 45; Stipulation

of Facts ¶ 9.) On May 7, 2004, Franco appeared in the Illinois State Court pursuant to the

Citations to Discover Assets. (Stipulation of Facts ¶ 7.)

---

[1] Citation proceedings are among the various post-judgment methods used in Illinois
to enforce and collect judgments. 735 ILL. COMP. STAT. 5/2-1402; ILL. SUP. CT. R. 277(b).

-4-

The Clerk of the Illinois State Court did not issue a citation to discover assets directed to the Delaware Secretary of State. (*Id.* ¶ 5.) In April 2004, Spehar served a copy of its domesticated judgment on the Delaware Secretary of State. (Stipulation of Facts ¶ 3.) Spehar alleges that it also served a third citation to discover assets and notice of citation on the Delaware Secretary of State on April 12, 2004, and then on April 13, 2004, the Delaware Secretary of State forwarded the citation to "CMGT c/o Louis J. Franco." In contrast, the Trustee avers that he searched the records of the Delaware Secretary of State and learned that Spehar apparently had not served its citation in Delaware. (Spehar Ex. No. 2–Trustee Aff. ¶ 11.)

On August 25, 2004, Spehar filed an involuntary Chapter 7 bankruptcy petition against CMGT. (Stipulation of Facts ¶ 11.) The Trustee was appointed on September 21, 2004. (*Id.* ¶ 12.) From December 2004 until September 2005, Gerry Spehar, Spehar's attorneys, and the Trustee negotiated a post-petition financing agreement to, in part, fund litigation expenses for the estate and to pursue a malpractice claim on behalf of CMGT. (*Id.* ¶ 13.) Spehar was represented by experienced bankruptcy counsel in its negotiations with the Trustee. (*Id.* ¶ 14.) On June 14, 2005, the Trustee and Spehar entered into a letter agreement (the "Letter Agreement") whereby Spehar agreed to loan money to CMGT's bankruptcy estate. (Spehar Ex. No. 25.) The Letter Agreement contained a provision that stated that the Trustee would "take all necessary or appropriate actions to void the UCC-1 financing statements or other liens that CMGT's shareholders or persons otherwise affiliated filed with the IL Secretary of State Illinois [sic] on or about 12/18/2003." (*Id.* ¶ 2b.) The Letter Agreement does not address the priority of Spehar's lien claim.

-5-

On July 15, 2005, the Trustee filed an application to enter into post-petition secured financing and other relief (the "Financing Motion"). (Stipulation of Facts ¶ 15.) The Financing Motion informed the Court that Spehar was providing post-petition financing for a potential malpractice action (the "Malpractice Action") against Mayer, Brown, Rowe & Maw ("Mayer, Brown"), professionals who had rendered services to CMGT. (*Id.*; Spehar Ex. No. 27.) As part of the agreement, Spehar was to share with CMGT's estate in any recovery made in the Malpractice Action. (Spehar Ex. No. 27 ¶¶ 6-10.) The Financing Motion stated in pertinent part as follows:

> Spehar . . . is the holder of a judgment against [CMGT] in the sum of $17,045,780.00 plus interest and costs. . . . The judgment was duly registered in the Circuit Court of the 18th Judicial Circuit, DuPage County. . . . A citation to discover assets was issued [by Spehar] and served upon the former president of [CMGT], Louis Franco. . . . To the extent that assets are available in this matter, Spehar . . . by virtue of the citation to discover assets which was served upon [CMGT] more than 90 days prior to the filing of the petition has a valid perfected lien.

(*Id.* ¶¶ 2 & 3.)

After an uncontested hearing on the Financing Motion, the Court entered an order on September 2, 2005 that had been prepared by counsel for the Trustee (the "Financing Order"). (Stipulation of Facts ¶ 17; Spehar Ex. No. 29.) The Financing Order provided that Spehar's advances to fund the Malpractice Action would be collateralized and repaid from the estate's recovery in that litigation and specifically recited and ordered that "[b]y virtue of its Citation[s] to Discover Assets, Spehar has a valid and perfected lien on the proceeds of any such recovery [from the Malpractice Action]." (Spehar Ex. No. 29 ¶ 6.) Further, the Financing Order stated that "[t]he Trustee shall take all reasonable and appropriate actions to void all liens that are asserted

-6-

to be superior to Spehar's valid and perfected lien in CMGT's assets. . . ." (*Id.* ¶ 8.) There were no objections raised to the Financing Motion or the Financing Order. (Stipulation of Facts ¶ 16.)

On September 7, 2005, Spehar paid the Trustee $5,000.00 as called for in the Financing Order. (Stipulation of Facts ¶ 19.) On November 7, 2005, the Trustee filed an application to employ special counsel for the purpose of investigating and prosecuting the Malpractice Action. (*Id.* ¶ 20.)

On March 22, 2006, Spehar filed a proof of claim in CMGT's bankruptcy case for a secured amount of $17,045,780 based on the Citations to Discover Assets. (Trustee Ex. No. 17.) Thereafter, on April 10, 2006, Spehar filed an amended proof of claim alleging a secured claim in the sum of $13,427,560 based on the Citations to Discover Assets, and an unsecured nonpriority claim in the amount of $3,618,220. (Trustee Ex. No. 18.) Neither Spehar's original proof of claim nor its amended proof of claim assert a secured claim arising from the entry of the Financing Order. Both proofs of claim are based on service of the Citations to Discover Assets. On August 28, 2006, the Trustee filed the Malpractice Action on behalf of CMGT's estate against Mayer, Brown in the Circuit Court of Cook County, Illinois. (Stipulation of Facts ¶ 23.) The Malpractice Action was subsequently removed to the United States District Court for the Northern District of Illinois in October of 2006. (*Id.*) That litigation is currently pending. (*Id.* ¶ 24.) The recovery, if any, from the Malpractice Action will be the only asset of significant value to the estate of CMGT. (*Id.*)

The dispute between the parties to this matter surfaced at or around August of 2006. At that time, the Trustee caused twenty-four adversary proceedings (the "Adversary Proceedings") to be filed against investors in CMGT. (*Id.* ¶ 26.) On March 26, 2007, the Trustee filed a motion

-7-

for approval of compromises of avoidance actions "against individuals or entities that hold interests in [CMGT's] equity (the "Investors")." (*Id.* ¶ 27.) Spehar objected to the Trustee's motion to compromise these Adversary Proceedings. (*Id.* ¶ 28.) On August 28, 2007, the Court entered an order granting the Trustee's motion. (*Id.* ¶ 29.) That order approved the settlement agreements the Trustee had reached with those Investors and also preserved the right of any party in interest to seek subordination of their claims. (*Id.*) There was no determination in the Adversary Proceedings whether any Investor held a secured claim. On or about August 13, 2007, Spehar made a demand upon the Trustee to void the Investors' liens. (*Id.* ¶ 30.)

On August 30, 2007, the Trustee filed the instant adversary proceeding. Thereafter, on October 5, 2007, the Trustee filed an amended complaint. Count I of the four-count amended complaint asserts that service of the Citations to Discover Assets on Franco was invalid under Illinois law to impose a citation lien on CMGT's assets because Franco had resigned from CMGT and thereafter did not have actual or apparent authority to act on behalf of or bind CMGT. As a result, the Trustee contends that Spehar does not have a valid lien against any assets of CMGT pursuant to the Citations to Discover Assets.

Under Count II of the amended complaint, the Trustee alleges that on May 7, 2004, the Malpractice Action had not been commenced by CMGT, and thus, even if service of the Citations to Discover Assets on Franco was valid, any claim of CMGT against Mayer, Brown was beyond the scope of, not covered by, and not subject to the Citations. The Trustee maintains that if service of the Citations to Discover Assets is determined to be valid, the scope of the Citations is limited, under 11 U.S.C. § 362, to CMGT's assets that were within the scope of the Citations as of August 25, 2004, the date the involuntary Chapter 7 bankruptcy petition was filed by Spehar.

-8-

Count III of the amended complaint objects under 11 U.S.C. §§ 502(a) and 704(a)(5) to the proof of claim filed by Spehar. According to the Trustee, the basis for Spehar's secured component of its claim is the lien created by the Citations to Discover Assets. The Trustee argues that if service of the Citations to Discover Assets is determined to be valid, Spehar does not have a secured claim with respect to any of the proceeds from the Malpractice Action because as of August 25, 2004, any claim of CMGT against Mayer, Brown was a potential chose in action beyond the scope of, not covered by, and not subject to the Citations to Discover Assets.

Count IV of the amended complaint asserts that pursuant to Illinois law and 11 U.S.C. § 362, Spehar does not have any interest in the proceeds from the Malpractice Action pursuant to the Financing Order beyond Spehar's post-petition capital advances. According to the Trustee, the secured lien claim of Spehar was never valid. The Trustee further contends that even if the lien was valid, on August 25, 2004, when the involuntary petition was filed, and on September 2, 2005, when the Court entered the Financing Order, the Malpractice Action was a potential chose in action beyond the scope of, not covered by, and not subject to the Citations to Discover Assets. The Trustee argues that pursuant to paragraphs 6 and 7 of the Financing Order, Spehar does not have any secured interest in the proceeds of the Malpractice Action beyond Spehar's post-petition monetary advances to CMGT's estate. Rather, its claim is otherwise unsecured.

Spehar filed an amended answer to the amended complaint and a counterclaim. Spehar alleges breach of contract by the Trustee, denies that its service of the Citations to Discover Assets was improper, and asserts that Franco had authority to act on CMGT's behalf. Spehar disputes the Trustee's assertions that Franco was not the president, chief executive officer, employee, or agent of CMGT on May 7, 2004, the time the Citations to Discover Assets were

-9-

served on him, (Am. Answer ¶ 13), and that when he appeared pursuant to the Citations, Franco

was not the president, chief executive officer, employee, or agent of CMGT. (*Id.* ¶ 15.) Spehar

denies that it did not properly serve the Citations to Discover Assets on CMGT. (*Id.* ¶ 18.)

In its counterclaim, Spehar alleges that the Trustee induced it to loan money to CMGT's

estate by promising that Spehar would have a valid pre-petition secured claim against the estate

in the sum of $17,045,780. Spehar alleges that the Trustee breached his agreement with Spehar

to allow it treatment as a secured claim holder. Spehar contends that the Financing Motion and

the Financing Order constitute an admission by the Trustee that Spehar has a valid pre-petition

claim of $17,045,780 plus interest and costs; that repayment of that amount is secured by a lien

against the estate created by the service of the Citations to Discover Assets on Franco; and the lien

created by the Citations to Discover Assets extends to the Malpractice Action and its proceeds.

Spehar additionally contends that the arguments in the Trustee's amended complaint are

barred under promissory estoppel and laches. Spehar argues that the Trustee made unambiguous

promises to recognize Spehar's lien on the proceeds of any recovery in the Malpractice Action.

According to Spehar, the Trustee was also obligated to "void" alleged secured liens asserted by

parties who had provided funds for CMGT's operations. Spehar maintains that it relied on the

Trustee's promises and was forced to incur the expense, time, and effort associated with enforcing

the Letter Agreement. Spehar also claims it was prejudiced because the Trustee brought this

action more than two years after Spehar was required to serve the Citations to Discover Assets.

Spehar argues that as a result of the Trustee's actions, it was unable to obtain evidence from the

Delaware Secretary of State about what was served there and abandoned the ability to purse its

own direct action for malpractice in the California state court against CMGT's former attorneys.

-10-

The Trustee, on the other hand, argues that Spehar represented that it had a valid and perfected lien on CMGT's assets. (Spehar Ex. No. 2 –Trustee Aff. ¶ 4.) Specifically, the Trustee avers that after he was appointed Trustee of CMGT's estate, Spehar approached him and advised that CMGT had a cause of action for malpractice against Mayer, Brown, and offered to fund the litigation. (*Id.* ¶ 3.) According to the Trustee, Spehar indicated that it held a lien claim against CMGT based on a judgment; the judgment had been registered in Illinois; and the lien had been perfected through service of the Citations to Discover Assets against CMGT in April 2004. (*Id.* ¶ 4.) The Trustee's investigation revealed that Spehar held a judgment against CMGT, and that the judgment had been recorded with the Delaware Secretary of State–the state of CMGT's incorporation. (*Id.* ¶ 5.) The Trustee avers that he relied on Spehar's assertion that the Citations to Discover Assets had been properly served on CMGT. (*Id.* ¶ 6.) Because Spehar took the position that Franco had resigned as president of CMGT before December of 2003, the Trustee states that he assumed the Citations to Discover Assets had been properly served on the Delaware Secretary of State when he negotiated an agreement with Spehar that was presented to the Court and embodied in the Financing motion in July 2005. (*Id.* ¶ 7.) Pursuant to his agreement with Spehar, the Trustee was to sell certain software and intangible assets to Spehar, and file the Malpractice Action if recommended by special counsel. (*Id.*) Further, the Trustee agreed to take reasonable and appropriate action to void the alleged secured liens asserted by the shareholders and investors of CMGT. (*Id.*)

-11-

Although the Financing Motion and the Financing Order are silent with respect to 11 U.S.C. § 551,[2] both state that Spehar had a valid and perfected lien on the proceeds of the Malpractice Action. According to the Trustee, he interpreted that language as a recital rather than a limitation on his actions in fulfilling his duties as Trustee. (*Id.* ¶ 9.) The Trustee avers that he did not learn that Spehar's lien was void until after the entry of the Financing Order, when Spehar objected to the settlement with the parties who had provided funds for CMGT's operations. (*Id.* ¶ 10.) It was at or around that time, according to the Trustee, that he searched the records of the Delaware Secretary of State and learned that Spehar had not served a citation to discover assets directed to CMGT's corporate registered agent in Delaware. (*Id.* ¶ 11.) Further, the Trustee avers that it is inconsistent with his duties as a case trustee to allow secured status to a lien claim based on a citation to discover assets that was not properly served. (*Id.* ¶ 12.) Finally, in the exercise of his duties under 11 U.S.C. § 704(5), the Trustee filed the instant adversary proceeding to determine the validity, extent, and priority of Spehar's lien. (*Id.*)

On January 16, 2008, Spehar filed a motion for judgment on the pleadings. Spehar argued that the amended complaint should be denied in its entirety under the doctrines of judicial estoppel, promissory estoppel, and the law of the case. Spehar further asserted that judgment should be entered against the Trustee on its breach of contract counterclaim. On March 12, 2008, this Court entered an order denying Spehar's motion because material issues of fact existed as to whether Spehar had a valid lien on CMGT's personal property via its service of the Citations to

---

[2] Section 551 provides that "[a]ny transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate. 11 U.S.C. § 551.

-12-

Discover Assets on Franco. *Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.)*, 384 B.R. 497 (Bankr. N.D. Ill. 2008).

On May 21, 2008, Spehar filed a motion for summary judgment on all counts of the amended complaint and Spehar's counterclaim. On August 13, 2008, the Trustee filed a cross-motion for summary judgment on Count II of the amended complaint and Spehar's counterclaim. The Court denied both motions for summary judgment because material issues of fact remained. *CMGT*, 2008 WL 4767434.

## III. DISCUSSION

### A.   Spehar's Citations to Discover Assets were not validly served on CMGT

The extent and validity of a statutory lien on CMGT's assets is determined by Illinois law and specifically, 735 ILL. COMP. STAT. 5/2-1402. Under Illinois law, all "supplementary proceedings shall be commenced by the service of a citation issued by the clerk." 735 ILL. COMP. STAT. 5/2-1402(a). A judgment becomes a lien on the personal property of the judgment debtor when served in accordance with § 2-1402(a). 735 ILL. COMP. STAT. 5/2-1402(m). Specifically, § 2-1402(m) provides in pertinent part as follows:

> The judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this Section. The lien binds nonexempt personal property, including money, choses in action, and effects of the judgment debtor as follows:

-13-

> (1) When the citation is directed against the judgment debtor, upon all personal property belonging to the judgment debtor in the possession or control of the judgment debtor or which may thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation.

735 ILL. COMP. STAT. 5/2-1402(m)(1).

When a citation is served in accordance with Illinois law, it becomes a lien that attaches to the personal property of the judgment debtor existing at that time or "which may thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation." *Id.* "The lien is considered perfected as of the date of service of the citation." *Cacok v. Covington,* 111 F.3d 52, 54 (7th Cir. 1997).

However, "[w]here service of process is not carried out in accordance with the manner provided by law it is invalid, no jurisdiction over the person of the defendant is acquired, and a default judgment rendered against the defendant is void." *Gocheff v. Breeding,* 368 N.E.2d 982, 983 (Ill. App. Ct. 1977). Personal jurisdiction may also be established by the defendant's waiver of any defect in service. *Schwinn Plan Comm. v. TI Reynolds 531 Ltd. (In re Schwinn Bicycle Co.),* 182 B.R. 526, 529 (Bankr. N.D. Ill. 1995). As the Supreme Court and the Seventh Circuit have held, "[c]hallenges to personal jurisdiction may be waived by either express or implied consent." *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1290 (7th Cir. 1989) (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n.14 (1985)). The burden of establishing personal jurisdiction is always on the party asserting it. *Nelson by Carson v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir. 1983).

-14-

Under Illinois law, process may be served on a foreign corporation through the registered agent appointed by the corporation or the Illinois Secretary of State. 805 ILL. COMP. STAT 5/5.25(a). If a foreign corporation has not been authorized to transact business in Illinois, "it shall be deemed that such corporation has designated and appointed the Secretary of State as an agent for process upon whom any notice, process, or demand may be served." 805 ILL. COMP. STAT 5/5.30.

A foreign corporation may also be served in the same manner as a domestic corporation. *Hall v. Metro. Life Ins. Co.*, 18 N.E.2d 388, 391 (Ill. App. Ct. 1938). In Illinois, "[a] private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law." 735 ILL. COMP. STAT. 5/2-204. Although § 2-204 does not indicate a preference of which individual should be served when a corporation is the defendant, generally, service should be made upon a registered agent if one exists. *Slates v. Int'l House of Pancakes, Inc.*, 413 N.E.2d 457, 466-67 (Ill. App. Ct. 1980). Service is valid, however, where a copy of the process is left with any of the corporation's officers or agents within the state. *Cleeland v. Gilbert*, 774 N.E.2d 821, 823 (Ill. App. Ct. 2002). The agent served must have actual authority to accept the service. *Slates*, 413 N.E.2d at 466.

There is no specific Illinois provision for serving dissolved foreign corporations, but a dissolved domestic corporation may be served through the Illinois Secretary of State. 805 ILL. COMP. STAT 5/5.25(b)(3). Illinois law providing for service of process "is permissive, not restrictive" and does not suggest that if a foreign corporation has a presence in Illinois, it must be served through an officer or agent within the state or the Illinois Secretary of State pursuant to §

-15-

5.25(a).  *Hall*, 18 N.E.2d at 391.  Therefore, these service of process provisions should not be

interpreted to preclude methods of substitute service proper under Delaware law.  *See* 805 ILL.

COMP. STAT 5/5.25(d) ("Nothing herein contained shall limit or affect the right to serve any

process, notice, or demand required or permitted by law to be served upon a corporation in any

other manner now or hereafter permitted by law.")

CMGT was incorporated in Delaware and it did not register with the Illinois Secretary of

State.  CMGT did not have a registered agent in Illinois.  Moreover, on March 1, 2002, CMGT

was dissolved by the Delaware Secretary of State.  Prior to its dissolution, CMGT had a registered

agent in Delaware.  However, the evidence presented at trial established that CMGT's registered

agent had stopped accepting service when the Citations to Discover Assets were served.  (Spehar

Ex. No. 52.)  Under these circumstances, service on the Delaware Secretary of State is a proper

substitute for service on the registered agent of the corporation under 735 ILL. COMP. STAT.

5/2-204.

Under Delaware law, after dissolution, the agency relationship between a corporation and

its local resident agent ceases and the agent is no longer authorized to accept process on behalf

of the corporation.  *Int'l Pulp Equip. Co. v. St. Regis Kraft Co.*, 54 F.Supp. 745, 748 (D.Del.

1944).  Delaware law provides for service upon the Secretary of State in the case of a dissolved

corporation with no resident agent.  8 DEL. CODE §§ 278 & 321.  Specifically, § 321 states in

relevant part :

> (a) Service of legal process upon any corporation of this State shall
> be made by delivering a copy personally to any officer or director
> of the corporation in this State, or the registered agent of the
> corporation in this State. . . .

-16-

(b) In case the officer whose duty it is to serve legal process cannot by due diligence serve the process in any manner provided for by subsection (a) of this section, it shall be lawful to serve the process against the corporation upon the Secretary of State, and such service shall be as effectual for all intents and purposes as if made in any of the ways provided for in subsection (a) hereof.

8 DEL. CODE § 321(a) & (b).  Section § 278, in turn, states in relevant part:

All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized.  With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

8 DEL. CODE § 278.

Furthermore, Delaware courts have recognized that "[t]he Secretary of State's capacity to accept service on behalf of a dissolved corporation is one of the conditions upon which a Delaware corporation pursues its right to do business under a Delaware charter." *Int'l Pulp Equip.*, 54 F.Supp. at 749.

In Counts I, III, and IV of the amended complaint, the Trustee requests a finding that Spehar is not a secured creditor because its alleged lien is based on Citations to Discover Assets

-17-

that were not properly served on CMGT. The parties do not dispute that on April 7, 2004, Spehar

filed two Citations to Discover Assets. One was issued to Franco as "President/CEO c/o CMGT,

Inc." and the other was issued to "CMGT, Inc., c/o Louis J. Franco, President and CEO." (Spehar

Ex. Nos. 33 & 34.) Both Citations were addressed to Franco at "2 South 647 White Birch Lane,

Wheaton, IL 60187," which was his home address. (Id.) Spehar argues that Franco's actions and

testimony demonstrate he had the authority to act on behalf of CMGT at the time he was served

with the Citations to Discover Assets. The Trustee maintains that Franco had resigned from

CMGT before the Citations to Discover Assets were served, and Franco was not the president,

chief executive officer, director, employee, or agent of CMGT when service upon him was

effectuated.

### 1. At the time Spehar served its Citations to Discover Assets, Franco had resigned from CMGT

Under Delaware law, dissolution of a corporation does not terminate the authority of an

agent authorized to receive service of process so long as the statutory period for winding up has

not expired. 8 DEL. CODE §§ 278 & 321. A corporation's existence continues unmodified for

three years while its officers and directors wind up its affairs unless application is made for the

appointment of a trustee or receiver. See 8 DEL. CODE §§ 278 & 279; Addy v. Short, 89 A.2d

136, 139 (Del. 1952) (stating that during three-year dissolution period, corporation functions

exactly as before dissolution); In re Citadel Indus., Inc., 423 A.2d 500, 504-05 (Del. Ch. 1980)

(noting that § 278 contemplates three-year period during which officers and directors wind up

corporate affairs). Thus, the authority of Delaware corporate officers and directors continues after

dissolution unless a trustee or receiver is appointed, and service on such officers is sufficient to

-18-

establish jurisdiction over the corporation.  However, a director or officer of a corporation may

resign at any time and thereby cease to be an officer, subject to any express charter or statutory

provisions to which he or she has expressly or impliedly assented in accepting office.  8 DEL.

CODE §§ 141(b) & 142(b).

Sections 141(b) and 142(b) deal with the resignation of corporate officers and directors.

Section 141(b) states, in pertinent part:

> Each director shall hold office until such director's successor is
> elected and qualified or until such director's earlier resignation or
> removal.  Any director may resign at any time upon notice given
> in writing or by electronic transmission to the corporation. . . .

8 DEL. CODE § 141(b).  Section 142(b) contains substantially the same language relating to officer

resignations providing, in pertinent part:

> Each officer shall hold office until such officer's successor is
> elected and qualified or until such officer's earlier resignation or
> removal.  Any officer may resign at any time upon written notice
> to the corporation.

8 DEL. CODE § 142(b).

These statutory provisions do not require written notice to the corporation before a

resignation can take effect.  *Gen. Video Corp. v. Kertesz*, C.A. No. 1922-VCL, 2008 WL

5247120, at *17 (Del. Ch. Dec. 17, 2008).  The statutory language  is construed as permissive

rather than mandatory and even an oral resignation may be effective so long as both the

corporation and the withdrawing officer clearly understand that the officer is " resigning from the

corporation and . . . abdicat[ing] all authority of office in the corporation upon his clear and

unequivocal announcement. . . ." *Dionisi v. DeCampli*, No. 9425, 1995 WL 398536, at *9 (Del.

Ch. June 28, 1995).

-19-

Determining whether a director or officer has resigned is a question of fact determined by the circumstances of each case. *Bachmann v. Ontell*, No. 7805, 1984 WL 8245, at *3 (Del. Ch. Nov. 27, 1984). "[L]oose and ambiguous language will not be regarded as sufficient to prove the resignation of a corporate officer, at least where the subsequent acts and declaration of the officer are inconsistent with any such contention." *Id.* (internal quotation omitted).

The case law in Illinois similarly indicates that an officer may explicitly resign by written or oral notice effective immediately. *Tate v. Wabash Datatech, Inc.*, 497 N.E.2d 1342, 1344 (Ill. App. Ct. 1986). Under Illinois law, an officer may also implicitly resign by the relinquishment or abandonment of his position. *Id.* However, a resignation is not valid and effective where the officer remains an officer and continues to conduct administrative affairs of a corporation. *Patient Care Servs., S.C. v. Segal*, 337 N.E.2d 471, 478 (Ill. App. Ct. 1975).

The Court concludes that at the time Spehar served its Citations to Discover Assets in April of 2004, Franco had effectively and actually resigned from his position as president and chief executive officer of CMGT. Franco testified that he resigned from CMGT on or about September 2003, and went to work for another employer in October or November of 2003.[3] Franco further testified that after his resignation, he ceased acting as president and chief executive officer of CMGT, and did not have any other employment relationship with CMGT. The Trustee

---

[3] The Court is in the best position to assess the credibility of the witnesses and weigh the evidence. *See Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (noting that deference is given to a trial court's findings that involve credibility of witnesses because only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is stated); *Torres v. Wis. Dept. of Health & Social Servs.*, 838 F.2d 944, 946 (7th Cir. 1988) (*citing Anderson*). The Court finds Franco's testimony credible.

-20-

testified that no officer or agent of CMGT took any action after Franco's resignation to re-appoint him as president or confer any authority on him to act on behalf of CMGT in any agency capacity.

An e-mail sent by CMGT's corporate counsel, Ron Given, to CMGT shareholders on September 19, 2003, confirms Franco's intent to resign, and states that CMGT could no longer act on behalf of shareholders because the corporation had run out of time and money. (Spehar Ex. No. 42.) In his April 10, 2004 letter to shareholders, Franco stated, "[a]s Ronald B. Given of Mayer, Brown . . . indicated to you in his e-mail dated September 19, 2003, I have resigned as President & CEO of CMGT, Inc. and no longer have any employment relationship with the company. This letter is to bring to your attention in my capacities of a fellow CMGT shareholder and claimant, the attached legal papers." (Spehar Ex. No. 45.) The Court finds these documents along with the testimony heard at trial to be sufficient evidence of effective notice of Franco's resignation to CMGT's shareholders. Gerry Spehar testified that he received the same e-mail announcement that was sent to CMGT's shareholders regarding Franco's intent to resign. Furthermore, the evidence presented at trial does not suggest that Ron Given or any of CMGT's shareholders expressed any doubts regarding Franco's resignation from CMGT. Franco's subsequent employment with another company also demonstrates that both CMGT and Franco clearly understood that he had resigned from CMGT.

Spehar additionally argues that Franco was a director of CMGT in April of 2004. In support of this argument Spehar presented only one document containing an entry from CMGT's directors' register in 2000. (Spehar Ex. No. 38.) While the register appears to indicate that Franco was elected as director of CMGT on July 15, 2000, this alone is insufficient to demonstrate that Franco remained a director in April of 2004. Spehar cites no other evidence

-21-

referencing Franco's status as director. Franco did not testify at trial in regard to his status as

director. The Trustee testified that he was not aware that Franco held any position with CMGT

other than president and chief executive officer. Furthermore, the Citations to Discover Assets

were directed to Franco as CMGT's "President/CEO" not as a director of CMGT. Accordingly,

the Court finds that Spehar has failed to establish that Franco was a director or officer of CMGT

at the time of service on him.

> **2.    Spehar's evidence at trial did not establish that at the time the
> Citations to Discover Assets were served, Franco had continuing
> authority to act on behalf of CMGT**

According to Illinois law, "the test of agency is whether the alleged principal has the right

to control the manner and method in which work is carried out by the alleged agent and whether

the alleged agent can affect the legal relationships of the principal." *Moy v. County of Cook*, 614

N.E.2d 265, 267 (Ill. App. Ct. 1993), *aff'd* 159 Ill.2d 519 (Ill. 1994). *See also In re S.M.

Acquisition Co.*, 319 B.R. 553, 568 (Bankr. N.D. Ill. 2005). Illinois courts have also emphasized

that unless the parties' relationship is so clear as to be undisputed, the existence and scope of an

agency relationship are questions of fact to be decided by the trier of fact. *Prichard Tower

Erections, Inc. v. Great Am. Ins. Co.*, 576 N.E.2d 206, 209 (Ill. App. Ct. 1991); *Matthews Roofing

Co. v. Cmty. Bank & Trust Co. of Edgewater*, 550 N.E.2d 1189, 1193 (Ill. App. Ct. 1990). The

"words and conduct" of the principal establish the agency relationship; the alleged agent's words

and conduct are not sufficient. *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664,

672 (7th Cir. 2004). The burden of establishing the existence of an agency relationship is on the

party asserting its existence. *Matthews Roofing*, 550 N.E.2d at 1193.

-22-

Spehar has not satisfied its burden of establishing the existence of an agency relationship between Franco and CMGT at the time of service of the Citations to Discover Assets on Franco. Spehar alleges that Franco acted on behalf of CMGT after his resignation in September of 2003. These alleged actions include: signing a "security agreement" as president and chief executive officer of CMGT on December 1, 2003 (Spehar Ex. No. 44); appearing at the citation proceedings on behalf of CMGT; providing corporate and financial records of CMGT to Spehar's attorneys; and sending a letter to CMGT's shareholders on April 10, 2004 (Spehar Ex. No. 45).

This evidence does not establish that Franco was in any way paid, supervised, controlled, or directed by CMGT at the time of service on him, nor does it establish that Franco had the ability to affect the legal relationships of CMGT at that time. Franco testified that the December 1, 2003 document was sent as a courtesy to shareholders and his signature was an electronic template that he had neglected to remove from his computer. (Spehar Ex. No. 44.) Franco also testified that during the citation proceedings he was not clear what was his role was and he informed Spehar's attorneys that he was no longer president of the company. In the April 10, 2004 letter, Franco clearly stated that he sent the letter "in my capacities of a fellow CMGT shareholder and claimant. . . ." (Spehar Ex. No. 45.) Both Gerry Spehar and Stephen Klenda testified that they had doubts regarding Franco's his ability to accept process at the time of service. Spehar has not presented any evidence that CMGT, which was dissolved and not conducting business in April of 2004, represented Franco to be its agent at that time. Thus, Franco's alleged conduct is not sufficient to establish an agency relationship. *See Sphere Drake Ins.*, 376 F.3d at 672. Accordingly, the Court finds that service of process on Franco, who had ceased to be an officer or agent of CMGT prior to the time of service, was insufficient to confer

-23-

in personam jurisdiction on CMGT.  Thus, the claim that Spehar obtained a citation lien and

thereby has a secured claim is rejected.

3.    **There is no return of service or other documentary evidence to conclusively establish that the Delaware Secretary of State was served a copy of Spehar's Citations to Discover Assets**

Franco was not an officer, director, or agent of CMGT at the time Spehar served him with

its Citations to Discover Assets.  Therefore, Spehar was required to served the Illinois Secretary

of State or Delaware Secretary of State as a substitute for CMGT's registered agent. *See* 735 ILL.

COMP. STAT. 5/2-204.  It is undisputed that Spehar did not serve its Citations to Discover Assets

on the Illinois Secretary of State.  Spehar alleges that it served a third citation to discover assets

and notice of citation on the Delaware Secretary of State on April 12, 2004, and then on April 13,

2004, the Delaware Secretary of State forwarded the citation to "CMGT c/o Louis J. Franco."

Spehar presented evidence that it served documents on the Delaware Secretary of State in April

2004, however, exactly what was served is unknown. (Spehar Ex. No. 41.)  It is undisputed that

the clerk of the Illinois State Court did not issue a citation directed to the Delaware Secretary of

State.  The actual documents or true copies of what was served on the Delaware Secretary of State

have not been supplied.  Franco testified that he had received the Citations to Discover Assets and

copies thereof from the State of Delaware.  However, the Delaware Secretary of State informed

Spehar that it could not determine what documents were actually received and served on CMGT

because its records were destroyed under Delaware law. (Trial Tr. p. 44 lines 5-11; p. 47 lines

4-12, Nov. 25, 2008.)  The Court finds that Spehar has not established valid service of an Illinois

citation issued and served on CMGT's Delaware registered agent or the Delaware Secretary of

State.

-24-

4. **Franco's appearance at the citation proceedings did not waive CMGT's right to challenge the validity of Spehar's service of process**

Some Illinois courts have refused to invalidate service of citations because of technical difficulties when defendant corporations had actual notice of the citations. *See Laborers Nat. Pension Fund v. ANB Inv. Mgmt. & Trust Co.*, 26 F.Supp.2d 1048, 1050-51 (N.D. Ill. 1998); *Martin v. C.D. Gray, Inc.*, 110 F.R.D. 398, 401 (N.D. Ill. 1986). Spehar argues that because Franco appeared at the citation proceedings on behalf of CMGT, CMGT had actual notice of the Citations to Discover Assets and waived its right to argue the enforceability of the Citations. At the time of the service, CMGT was dissolved and Franco was not authorized to receive process on behalf of CMGT. Franco testified that he received the Citations to Discover Assets and forwarded them to CMGT shareholders. While this may show that Franco had actual notice, it does not establish or impute the same for CMGT. There is no evidence that CMGT or its shareholders acknowledged receiving the Citations to Discover Assets. This Court has stated that the only way to effectuate notice on CMGT in April of 2004, would have been through proper service on the Illinois Secretary of State or the Delaware Secretary of State. The Seventh Circuit recently reiterated that "[a] district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process. . . ." *United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008). The Court further reminded district courts that "the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint." *Id.*; *see also Equity Residential Props. Mgmt. Corp. v. Nasolo*, 847 N.E.2d 126, 134 (Ill. App. Ct. 2006) (holding that a defendant's actual knowledge that an action is pending or that service has been attempted is not

-25-

the equivalent of service of summons and will not relieve the plaintiff of its burden or vest the court with jurisdiction).

Spehar has failed to establish that any of its Citations to Discover Assets were properly served on CMGT. The Citations filed by Spehar on April 7, 2004 and served on Franco are therefore ineffective. Spehar does not have a citation lien on any assets of CMGT pursuant to the Citations to Discover Assets. Thus, Spehar does not have a perfected secured claim against the estate of CMGT pursuant to the Citations. Its undisputed judgment claim is valid but wholly unsecured. In Count II of the amended complaint, the Trustee argues that even if Spehar's service of the Citations to Discover Assets was proper, the resulting lien should not extend to any recovery from the Malpractice Action because the Malpractice Action was a "potential" chose of action when the Citations were served. The Court need not address the parties' arguments regarding the scope of Spehar's lien because Spehar never acquired a valid and perfected lien on any of CMGT's assets at the time of service. Therefore, it is irrelevant whether the Malpractice Action was a "potential" chose in action at that time. The Trustee is entitled to judgment on Count II of the amended complaint because Spehar did not acquire or perfect a valid lien on the Malpractice Action by virtue of its Citations to Discover Assets.

**B.     The Trustee has complied with the terms of the Letter Agreement and the Financing Order**

Spehar's counterclaim against the Trustee consists of one count for breach of contract based upon the Trustee's failure to void the CMGT Investors' liens. Spehar also raises two substantive defenses: estoppel and laches. Spehar alleges that in return for financing of the Malpractice Action, the Trustee made unambiguous promises to recognize Spehar's status as a

-26-

secured lien holder and void alleged liens held by CMGT Investors. Spehar maintains that the

Trustee breached these obligations by challenging the validity of its lien, avoiding the Investors'

liens and preserving them for the benefit of the estate pursuant to § 551. The Trustee, however,

alleges that he performed his obligations under the Financing Order.

The Court concludes that the terms of the Financing Order and Letter Agreement did not

constitute admissions by the Trustee that Spehar would have a valid pre-petition secured claim

against CMGT's assets, nor did the Court make a finding of same. At trial, the parties presented

evidence regarding their respective intents in entering into the Letter Agreement and Financing

Order. Gerry Spehar testified that he clearly demanded a position of priority over all other

creditors in exchange for providing post-petition financing. Gerry Spehar also testified that the

Trustee agreed to void the Investors' liens so that they would have no effect whatsoever on the

distribution of any recovery from the Malpractice Action. The evidence presented at trial does

not establish that the Trustee ever agreed to those terms. Spehar has not produced any

documentary evidence that it bargained for a lien on the proceeds of the Malpractice Action.

Spehar presented several exhibits showing the content of correspondence between the parties to

support its argument that the parties negotiated the meaning of several terms. Spehar, however,

did not attempt to define or highlight the importance of these terms in the Letter Agreement or

the Financing Order. Furthermore, Spehar's interpretation of the Trustee's obligations under

these terms is contrary to established bankruptcy procedures.

The Trustee testified that if he had agreed to the validity of Spehar's lien, the motion

would have had to comply with Local Bankruptcy Rule 4001-2. The Trustee did not comply with

this rule because he believed that the agreement served only the limited function of providing

-27-

funds for potential litigation. The Trustee testified that at the time the parties negotiated the

Financing Order, he relied on Spehar's representations of valid service on CMGT, and he had not

yet made his determination regarding the nature, validity, and extent of Spehar's lien. The

Trustee also testified that as an experienced bankruptcy trustee, he understood the term "void" to

mean the exercise of his avoiding powers under § 551 of the Bankruptcy Code. There was no

correspondence or other documentation that would suggest a different meaning. The Trustee did

not agree that § 551 would not apply to the lien.

The Court agrees with the Trustee's interpretation of the language in the Financing Order

as recitals rather than terms of a contract. The Court made no express findings about Spehar's

claimed perfected citation lien because no supporting documentary evidence was furnished to the

Court at that time to establish same. Spehar did not object to the entry of the Financing Order.

If Spehar intended any terms to be more than mere recitals, it should have requested that the Order

clearly reflect its intended meanings and any specific obligations it intended to impose on the

Trustee through the use of those terms.

The contract of the parties is limited to the terms approved by the Court in the Financing

Order. In entering the Financing Order, the Court did not make any independent findings or a

determination of the validity, extent, or priority of the lien. *CMGT*, 384 B.R. at 508-509. The

Court entertained the Financing Motion on the parties' stipulation, which simply recited that

Spehar had perfected its lien. *Id*. at 509. The Court has already declared that its September 2,

2005 Financing Order did not grant Spehar a contractual lien on the proceeds of any recovery in

the Malpractice Action. *Id*. Pursuant to paragraph 6 of the Financing Order, Spehar's interest

beyond its post-petition monetary advances to the estate in any proceeds of the Malpractice Action

-28-

was based only on Spehar's Citations to Discover Assets, which this Court has now determined

to be insufficient. Therefore, Spehar has no secured interest in any proceeds of the Malpractice

Action beyond its post-petition additional monetary advances to the estate and interest thereon.

The Court additionally finds that the Trustee has not breached any terms of the Financing

Order. The Trustee's actions were consistent with his fiduciary duties to all estate creditors and

customary bankruptcy procedures. The Trustee has fulfilled his obligations to Spehar by causing

the Malpractice Action to be filed, bringing the Adversary Proceedings against the Investors and

avoiding their claimed liens while preserving same under § 551, and transferring CMGT's interest

in designated software and intangibles to Spehar. Thus, Spehar's claim against the Trustee for

breach of contract fails.

### C.     Spehar has not established the necessary elements of promissory estoppel

To prevail on a claim for promissory estoppel, a party must prove each of the following

elements: (1) an unambiguous promise; (2) reasonably and justifiable reliance by the party to

whom the promise was made; (3) the reliance was expected and foreseeable by the promissor; and

(4) the promisee relied on the promise to its detriment. *Dumas v. Infinity Broad. Corp.*, 416 F.3d

671, 677 (7th Cir. 2005) (*quoting Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004

(Ill. 1990)); *Fischer v. First Chi. Capital Mkts., Inc.*, 195 F.3d 279, 283 (7th Cir. 1999).

"'Promissory estoppel is not a doctrine designed to give a party . . . a second bite at the apple in

the event that it fails to prove a breach of contract.'" *All-Tech Telecom, Inc. v. Amway Corp.*, 174

F.3d 862, 869-70 (7th Cir. 1999) (*quoting Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir.

1984)).

-29-

The Court has already determined that the recitals contained in the Letter Agreement and the Financing Order did not constitute unambiguous promises by the Trustee. Spehar argues that because it relied on the Trustee to advance its interest in the Malpractice Action, it has lost the opportunity to bring its own action in California against Mayer, Brown. Gerry Spehar testified that he informed the Trustee and other individuals in a telephone conversation that one condition of the post-petition financing was that Spehar would forego its own direct action pursuant to California law against Mayer, Brown in exchange for the opportunity to share as a creditor in the proceeds of the Malpractice Action brought on behalf of CMGT's estate. This condition does not appear in any of the correspondence between the parties, and the Trustee denies that the conversation ever took place.

The Trustee was aware that Gerry Spehar initially demanded that he control the decision whether to settle the potential Malpractice Action against Mayer, Brown. The Trustee does not deny that Spehar formulated a graduated proposal intended as an incentive for the Trustee to accept higher settlements more in line with what Spehar considered appropriate. However, Spehar's deliberate actions in foregoing its own lawsuit and direct action in California against Mayer, Brown were neither reasonable nor foreseeable by the Trustee. Spehar has not suffered any detriment as a direct result of the Trustee's actions. Gerry Spehar admitted at trial that he chose not to pursue the California action against Mayer, Brown at least in part because "it seemed better to do it with CMGT as the plaintiff because they were Ron Given's actual client" and that the action in "California was more expensive" and "would have been out of pocket more than I can afford. . . ." (Trial Tr. p. 127 lines 9-13; p. 154 lines 5-6, Nov. 24, 2008.) The extant Malpractice Action potentially allows Spehar, along with the other unsecured creditors of the

-30-

estate, to share in the proceeds of litigation that it could not have brought on its own behalf. Moreover, even as an unsecured claimant, Spehar holds 80-90% of the unsecured claims according to the Trustee's testimony. The Court finds that Spehar has not established any of the elements of promissory estoppel. Therefore, promissory estoppel does not bar the Trustee's claims.

### D.     Spehar has not established the necessary elements of its laches defense

Finally, Spehar contends that the Trustee is barred by the doctrine of laches from challenging the validity of Spehar's lien. In order for laches to apply in a case, the party asserting the defense must establish two elements: (1) an unreasonable lack of diligence by the party against whom the defense is asserted; and (2) prejudice arising from the delay. *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 620 (7th Cir. 2002); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). A defendant is prejudiced from delay in asserting a claim where the defendant has changed its position in a way that would not have occurred if the plaintiff had not delayed. *Hot Wax*, 191 F.3d at 824. Spehar claims that it was prejudiced because the Trustee brought this action more than two years after the service of Spehar's Citations to Discover Assets. Spehar argues that as a consequence, it was unable to obtain evidence of service from the Delaware Secretary of State. (Spehar Ex. No. 41.)

The Trustee credibly testified that in a bankruptcy case where there are assets from which claims may be paid, the claims allowance process customarily does not take place until later in the case, after funds have become available for distribution to creditors.   At the time the Financing Order was negotiated and entered, there were no funds available for distribution.  In

-31-

fact, there are still no other recovered funds in the CMGT estate, and there is no assurance that there will ever be funds in the estate absent success in the Malpractice Action. The Trustee testified that he relied on Spehar's representations of valid service of process and had no reason to believe that the Financing Order would establish the validity of Spehar's lien. Therefore, he did not undertake any independent investigation during the negotiations or the time the Financing Order was entered. Because the claims allowance process does not ordinarily take place at that stage of a bankruptcy case, it was Spehar's responsibility to adequately document and protect its claim. Creditors who claim priority status bear the burden of showing that they are entitled to the asserted priority. *In re Nat'l Steel Corp.*, 321 B.R. 901, 905 (Bankr. N.D. Ill. 2005).

Spehar has not demonstrated that it would be in any different position if the Financing Order was never entered by this Court. Spehar bears the ultimate burden of establishing the amount and priority of its claim. *S.N.A. Nut Co. v. Tulare Nut Co. (In re S.N.A. Nut Co.)*, 204 B.R. 537, 540 (Bankr. N.D. Ill. 1997). As a result of Spehar's failure to properly serve its Citations to Discover Assets on CMGT, Spehar is relegated the status of an unsecured creditor by virtue of its undisputed California judgment that was domesticated in Illinois. The Financing Order and Letter Agreement did not alter that status nor did they require the Trustee to address the priority of Spehar's lien.

The Trustee testified that he first discovered that CMGT's Investors were questioning the validity and priority of Spehar's lien during the settlement of the Adversary Proceedings against them. Upon receiving this information, the Trustee immediately began an investigation into Spehar's service of process on CMGT. The Trustee only determined that he would challenge Spehar's lien after he discovered that a citation was not issued to and properly served upon the

-32-

Delaware Secretary of State. The Trustee's actions do not demonstrate "an unreasonable lack of diligence." Hence, Spehar's claim under the doctrine of laches fails and the defense does not bar the Trustee's claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants judgment in favor of the Trustee on Counts I, II, III, and IV of the amended complaint. The Citations to Discover Assets filed by Spehar on April 7, 2004 were not properly served on CMGT, and, as a result, Spehar does not have a lien against any of the assets of CMGT pursuant to the Citations. Thus, Spehar does not have a secured claim against the estate of CMGT, and Spehar does not have a secured interest in any proceeds of the Malpractice Action pursuant to the Financing Order beyond Spehar's post-petition advances to the estate. Finally, the Court grants judgment in favor of the Trustee on Spehar's counterclaim alleging breach of contract, promissory estoppel, and laches.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: 3/17/9

_____
John H. Squires
United States Bankruptcy Judge

cc:    See attached Service List

**SERVICE LIST**

**David E. Grochocinski, Trustee v. Spehar Capital, LLC**
**Adversary Case No. 07 A 00838**

David P. Lloyd, Esq.
Kathleen M. McGuire, Esq.
Grochocinski Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60462

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604

Michael A. O'Brien, Esq.
O'Brien Law Offices, P.C.
124A S. County Farm Road
Wheaton, IL 60187

Kenneth A. Franklin, Esq.
Rodi Pollock Pettker Christian & Pramov
444 S. Flower Street, 17th Floor
Los Angeles, CA 90071