## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 04 B 31669 |
| CMGT, INC., | ) | Chapter 7 |
| | ) | Judge John H. Squires |
| Debtor. | ) | |
| | ) | |
| DAVID E. GROCHOCINSKI, Trustee, | ) | |
| | ) | Adversary No. 07 A 00838 |
| Plaintiff, | ) | |
| | ) | |
| SPEHAR CAPITAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the motion filed by Spehar Capital, LLC ("Spehar") for relief from a judgment pursuant to Federal Rule of Bankruptcy Procedure 9024, which adopts Federal Rule of Civil Procedure 60. For the reasons set forth herein, the Court denies Spehar's motion.

### I. JURISDICTION AND PROCEDURE

On March 17, 2009, the Court entered a Memorandum Opinion and Order that granted judgment in favor of David E. Grochocinski, the Chapter 7 trustee (the "Trustee") for the estate of CMGT, Inc. ("CMGT"), and against Spehar. *Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.)*, 402 B.R. 262 (Bankr. N.D. Ill. 2009). Thereafter, on March 27, 2009, Spehar filed a notice of appeal of the judgment. (Docket No. 200.) The appeal was assigned to Judge Robert W. Gettleman of the United States District Court for the Northern District of Illinois (Case No. 09 C 2822). On July 29, 2009, Judge Gettleman entered an order that remanded this matter to the

-2-

Court for the limited purpose of having the Court entertain Spehar's Rule 60 motion. The Court afforded the Trustee the opportunity to respond to the motion and Spehar the chance to reply thereto. The Court then took the matter under advisement.

## II. FACTS AND BACKGROUND

The relevant facts and background are contained in the Court's March 17, 2009 Opinion and will not be repeated here. *CMGT*, 402 B.R. 262. That Opinion made findings of fact and conclusions of law that are incorporated here by reference. The Court concluded, upon hearing the testimony and reviewing all of the documentary evidence after a two-day trial in November 2008, that citations to discover assets filed by Spehar on April 7, 2004 were not properly served on CMGT, and, as a result, Spehar did not have a lien against any of the assets of CMGT pursuant to the citations. *Id.* at 278. This conclusion was based in part on the Court's finding that Spehar's April 2004 service of the citations to discover assets upon Louis J. Franco ("Franco"), the former president and chief executive officer of CMGT, did not constitute proper service on CMGT because at the time Spehar served its citations to discover assets, Franco had resigned from CMGT. *Id.* at 275. The Court found that Franco testified credibly that he resigned from CMGT on or about September 2003, and went to work for another employer in October or November of 2003. *Id.* Franco further testified that after his resignation, he ceased acting as president and chief executive officer of CMGT, and he did not have any other employment relationship with CMGT. *Id.* The Trustee testified that no officer or agent of CMGT took any action after Franco's resignation to re-appoint him as president or confer any authority on him to act on behalf of CMGT in an agency capacity. *Id.*

-3-

An e-mail sent by CMGT's corporate counsel, Ronald Given, to CMGT shareholders on September 19, 2003, confirmed Franco's intent to resign, and stated that CMGT could no longer act on behalf of shareholders because the corporation had run out of time and money. (*Id.*; Spehar Trial Ex. No. 42). In an April 10, 2004 letter to shareholders, Franco stated, "[a]s Ronald B. Given of Mayer, Brown . . . indicated to you in his e-mail dated September 19, 2003, I have resigned as President & CEO of CMGT, Inc. and no longer have any employment relationship with the company. This letter is to bring to your attention in my capacities of a fellow CMGT shareholder and claimant, the attached legal papers." (*CMGT*, 402 B.R. at 275-76; Spehar Trial Ex. No. 45.) This statement was repeated by Franco in an e-mail dated April 12, 2004. (Spehar Trial Ex. No. 46.)

The Court found that these documents along with the testimony heard at trial were sufficient evidence of effective notice of Franco's resignation to CMGT's shareholders. *CMGT*, 402 B.R. at 276. Gerry Spehar, the president and owner of Spehar, testified that he received the same e-mail announcement that was sent to CMGT's shareholders regarding Franco's intent to resign. *Id.* Furthermore, the evidence presented at trial did not suggest that Ronald Given or any of CMGT's shareholders expressed any doubts regarding Franco's resignation from CMGT. *Id.* Franco's subsequent employment with another company also demonstrated that both CMGT and Franco clearly understood that he had resigned from CMGT. *Id.*

The Court further found that the evidence did not establish that Franco was in any way paid, supervised, controlled, or directed by CMGT at the time of service on him, nor did it establish that Franco had the ability to affect the legal relationships of CMGT at that time. *Id.* at 277. Franco testified that a December 1, 2003 "security agreement" was sent as a courtesy to

shareholders and his signature was an electronic template that he had neglected to remove from his computer. (*Id.*; Spehar Trial Ex. No. 44 ). Franco testified that a November 2003 e-mail to Spehar was not sent in his capacity as president and chief executive officer because at that time Franco "was basically winding down the affairs of the company as best I could . . . ." (Trial Tr. p. 25 lines 20-21, Nov. 25, 2008; Spehar Trial Ex. No. 43). The e-mail also contained a signature block that had been left on his computer as an "oversight." (Trial Tr. p. 25 lines 17-20; p.26 lines 6-7, Nov. 25, 2008; Spehar Trial Ex. No. 43.) Franco also testified that during the citation proceedings he was not clear what was his role was, and he informed Spehar's attorneys that he was no longer president of the company. *CMGT*, 402 B.R. at 277. In the April 10, 2004 letter and the e-mail dated April 12, 2004, Franco clearly stated that the letter and the e-mail were sent "in my capacities of a fellow CMGT shareholder and claimant . . . ." (Spehar Trial Ex. Nos. 45 & 46.) Both Gerry Spehar and Stephen Klenda, Spehar's former attorney, testified that they had doubts regarding Franco's ability to accept process at the time of service. *CMGT*, 402 B.R. at 477. Spehar did not present any evidence that CMGT, which was dissolved and not conducting business in April of 2004, represented Franco to be its agent at that time. *Id.* Thus, the Court found that Franco's alleged conduct was not sufficient to establish an agency relationship with CMGT. *Id.*

The Court additionally found that Spehar failed to establish that Franco was a director or officer of CMGT at the time of service on him. *Id.* In support of this argument, Spehar presented only one document containing an entry from CMGT's directors' register in 2000. (Spehar Trial Ex. No. 38.) While the register appeared to indicate that Franco was elected as director of CMGT on July 15, 2000, this alone was insufficient to demonstrate that Franco remained a director in

-5-

April of 2004. *CMGT*, 402 B.R. at 276. Spehar cited no other evidence referencing Franco's status as director. *Id.* Franco did not testify at trial in regard to his status as director. *Id.* The Trustee testified that he was not aware that Franco held any position with CMGT other than president and chief executive officer. *Id.* Furthermore, the citations to discover assets were directed to Franco as CMGT's "President/CEO" not as a director of CMGT. *Id.* Accordingly, the Court found that service of process on Franco, who had ceased to be an officer, director, or agent of CMGT prior to the time of service, was insufficient to confer in personam jurisdiction on CMGT. *Id.* at 277. Therefore, Spehar was required to serve the Illinois Secretary of State or Delaware Secretary of State as a substitute for CMGT's registered agent because CMGT had been dissolved by the Delaware Secretary of State on March 1, 2002. *Id.* The Court found that Spehar had not established valid service of an Illinois citation issued and served on CMGT's Delaware registered agent or the Delaware Secretary of State. *Id.* at 277-78. Thus, the claim that Spehar obtained a citation lien and thereby had a secured claim was rejected. *Id.* at 278.

On August 26, 2009, Spehar filed this motion for relief from the judgment entered by the Court on March 17, 2009. (Docket No. 231.) According to Spehar, new evidence has been discovered which contradicts this Court's findings in reliance on Franco's testimony. On September 4, 2009, the Trustee filed a response to Spehar's motion for relief from the judgment. On September 12, 2009, one day after the filing deadline had passed, Spehar filed only four pages of an incomplete reply to the Trustee's response. Then, on September 14, 2009, three days after the filing deadline, Spehar filed a twelve page "corrected" reply to the Trustee's response, which claimed that the "originally filed [r]eply was inadvertently scanned with only the first four pages." (Docket Nos. 241 & 242.)

-6-

## III. APPLICABLE STANDARDS

Rule 60 regulates the procedure for obtaining relief from final judgments. *Arrieta v. Battaglia*, 461 F.3d 861, 864 (7th Cir. 2006). "The fundamental purpose of the Rule 60(b) motion is to prevent the judgment from becoming a vehicle of injustice." *Mumford v. Bowen*, 814 F.2d 328, 331 (7th Cir. 1986) (internal quotation omitted). Spehar seeks relief under Rule 60(b)(2) and (b)(6). Rule 60(b) provides in pertinent part as follows:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); . . . (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b)(2) & (6).

Rule 60(b) contains five clauses, (b)(1) - (b)(5), delineating specific grounds for obtaining relief. *Wesco Prods. Co. v. Alloy Automotive Co.*, 880 F.2d 981, 983 (7th Cir. 1989). Additionally, Rule 60(b) contains a catchall clause in (b)(6). *Id.* The first five clauses and the catchall clause are mutually exclusive. *Webb v. James*, 147 F.3d 617, 622 (7th Cir. 1998). "'Thus, if the asserted grounds for relief fall within the terms of the first [five] clauses of Rule 60(b), relief under the catchall provision is not available.'" *Brandon v. Chi. Bd. of Educ.*, 143 F.3d 293, 295 (7th Cir. 1998) (*quoting Wesco*, 880 F.2d at 983). The Court finds that because Spehar alleges that there is newly discovered evidence under Rule 60(b)(2), it is not entitled to relief under Rule 60(b)(6), and the Court will not further address that portion of the Rule.

Motions under Rule 60(b) are subject to various time limits. *Wesco*, 880 F.2d at 983. Motions that allege grounds for relief delineated in (b)(1)-(b)(3) must be brought within one year after the entry of the judgment or order or the date of the proceeding. FED. R. CIV. P. 60(c)(1);

*Arrieta*, 461 F.3d at 864. In contrast, motions brought under (b)(4)-(b)(6) are not subject to an express time limit, but still must be filed within a reasonable time following the entry of judgment. *Id.* at 864-65. The Court entered its final judgment on March 17, 2009. Spehar filed the instant motion on August 26, 2009. Accordingly, Spehar has brought the Rule 60(b)(2) motion within one year from the entry of the final judgment.

The Seventh Circuit has instructed that relief under Rule 60(b) is an extraordinary remedy and should be granted only in exceptional circumstances. *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006); *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999). The burden of establishing proper grounds for Rule 60 relief rests upon the movant. *Nat'l Bank of Joliet v. W. H. Barber Oil Co.*, 69 F.R.D. 107, 109 (N.D. Ill. 1975). Whether to grant relief requested under Rule 60(b) is left largely to the trial court's discretion. *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 473 (7th Cir. 2008); *LSLJ P'ship v. Frito-Lay, Inc.*, 920 F.2d 476, 479 (7th Cir. 1990). Rule 60(b) is an extraordinary remedy, designed to address mistakes attributable to exceptional circumstances and not mere erroneous applications of law by a trial court. *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

Rule 60(b)(2) states that a judgment may be set aside based upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial. . . ." FED. R. CIV. P. 60(b)(2). Evidence is "new" only if it is discovered after the litigation is over and judgment has been entered. *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002). The Seventh Circuit has set forth eight prerequisites to the granting of a motion under Rule 60(b)(2): (1) the evidence was in existence at the time of trial or pertains to facts in existence

-8-

at the time of trial; (2) the evidence was discovered following the trial; (3) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (4) the evidence is admissible; (5) the evidence is credible; (6) the new evidence is material; (7) the evidence is not merely cumulative or impeaching; and (8) the new evidence is likely to change the outcome. *United States v. McGaughey*, 977 F.2d 1067, 1075 (7th Cir. 1992); *Gomez v. Chody*, 867 F.2d 395, 405 (7th Cir. 1989); *Mumford*, 814 F.2d at 329-30; *but see Jones*, 188 F.3d at 732 (listing only five prerequisites for relief under Rule 60(b)(2) that do not include credibility of the evidence); *Harris v. Owens-Corning Fiberglass Corp.*, 102 F.3d 1429, 1434 n.3 (7th Cir. 1996) (same); *CMC Heartland Partners v. Union Pac. R.R. (In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.)*, 78 F.3d 285, 293-94 (7th Cir. 1996) (same); *Harris Trust & Savs. Bank v. Edelson (In re Wildman)*, 859 F.2d 553, 557-58 (7th Cir. 1988) (same); *McKnight v. United States Steel Corp.*, 726 F.2d 333, 336 (7th Cir. 1984) (same). The Seventh Circuit has made it clear, however, that the new evidence must be credible. *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 803 (7th Cir. 1993). If any one of the prerequisites is not met, then the Rule 60(b)(2) motion must fail. *Jones*, 188 F.3d at 732; *Wildman*, 859 F.2d at 558.

### IV. <u>DISCUSSION</u>

The Court finds that Spehar failed to meet the requirements for relief under Rule 60(b)(2). In this matter, it is on the third element that Spehar falters. Spehar failed to prove that it exercised the necessary due diligence before judgment was issued against it. Diligence does not look at what the litigant discovered, but what it could have discovered. *Kough v. Teamsters' Local 301 Pension Plan*, No. 06 C 5235, 2008 WL 351859, at *2 (N.D. Ill. Feb. 8, 2008).

-9-

"A party needs awfully good stuff to win a Rule 60(b)(2) motion," *Publicis Commc'n v. True N. Commc'ns Inc.*, 206 F.3d 725, 730 (7th Cir. 2000), and Spehar has not presented "awfully good stuff" in order to warrant relief from the judgment. There is nothing to suggest that Spehar could not have acquired the information upon which it now seeks to rely before judgment was granted. In fact, most of its arguments are based on exhibits already submitted at trial. It is clear that this information existed at the time of trial.

Spehar's efforts to argue due diligence are unavailing. In moving for relief from the judgment in this proceeding, Spehar submitted select portions of an affidavit from Louis J. Franco (the "Franco Affidavit") dated October 9, 2007, and filed on May 29, 2009 in the Trustee's action on behalf of CMGT against Mayer Brown Rowe & Maw LLP and Ronald B. Given, Case No. 06 C 5486 in the United States District Court for the Northern District of Illinois, Eastern District (the "Malpractice Action"). (Spehar Motion Ex. A.) Spehar has also submitted select portions of the Plaintiff's Local Rule 56.1(b)(3)(C) Statement in Support of His Response to the Defendants' Motion for Summary Judgment (the "Fact Statement") (Spehar Motion Ex. B); portions of the Plaintiff's Response to the Defendants' Local Rule 56.1(a) Statement of Undisputed Facts in Support of Their Motion for Summary Judgment Based on Their Unclean Hands Defenses (the "Response to Fact Statement") (*id.*); and the Plaintiff's Motion to Compel Production of Documents (Spehar Motion Ex. C) all filed by the Trustee in the Malpractice Action.

Spehar argues that this evidence was undiscoverable until it was disclosed in public filings on May 29, 2009 in the Malpractice Action. While this may true, the argument misses the point. While the Franco Affidavit and pleadings submitted in the Malpractice Action were obviously

-10-

unavailable at the time of trial in November 2008, the substantive information contained therein on which Spehar bases its arguments was available. Regardless of whether Spehar acted with due diligence once it had the information, Spehar failed to act with due diligence to obtain this information before the Court entered judgment in this adversary proceeding. Spehar does not offer a convincing explanation as to why it could not have discovered this information at an earlier stage of the proceedings.

Furthermore, the documents submitted as "newly discovered" evidence by Spehar are incomplete. Spehar has submitted only selected pages from the Franco Affidavit (Spehar Motion Ex. A), the Fact Statement (Spehar Motion Ex. B), and the Response to the Fact Statement (Spehar Motion Ex. C.) "[I]t is only logical that a . . . court weigh the credibility of the evidence before granting or denying a Rule 60(b) motion." *Daniels*, 983 F.2d at 803. "Credibility determinations are necessary to these decisions." *Id.* The Court cannot determine the credibility of statements drawn from an incomplete record. Spehar offers no explanation as to why the entire documents were not submitted to the Court.

A.  **The evidence offered by Spehar is not "newly discovered" evidence**

In the Affidavit, Franco states that, "[o]n or about November 1, 2000, concurrent with the resignation of Richard M. Ross, I assumed the position of CMGT's Chairman [of the Board of Directors], President and Chief Executive officer. Subsequently, I was responsible for the day-to-day executive leadership and management of the Company, and I remained in that role up until CMGT *ceased operations*." (Spehar Motion Ex. A at p. 1.) (emphasis supplied). Franco did not state in the Affidavit or testify at trial as to when "CMGT ceased operations." The Franco Affidavit does not contain any information regarding Franco's resignation from CMGT. There

-11-

are no statements in the Affidavit that Franco took any actions on behalf of CMGT after September 2003. In fact, in the Affidavit, the last action that Franco refers to taking on behalf of CMGT was in August of 2003. (*Id.* at p. 6, ¶ 12.) The Franco Affidavit alone does not prove that Franco was continuing to act on behalf of CMGT in any capacity in April of 2004, months after CMGT was dissolved and Franco had stopped receiving a salary. Instead, Spehar seeks to combine Franco's Affidavit with documents that were already submitted as evidence at trial to support its argument that Franco was continuing to act as chairman, president, and chief executive officer of CMGT until April 30, 2004.

Spehar argues that the Franco Affidavit should be considered in conjunction with Spehar's Trial Exhibit No. 47. Exhibit No. 47 appears to be an e-mail sent by Robert Crandell, an officer of CMGT, to Franco and Ronald Given on May 5, 2004. (Spehar Trial Ex. No. 47.) The subject line of the e-mail states "CMGT Demise notice," and attached to the e-mail document is another document stating as follows:

> We are taking an indefinite leave of absence. . . .
>
> CMGT Inc. and it's [sic] wholly owned subsidiary Touch Speed Technology Inc. regret to announce that they have ceased active operations as of April 30, 2004. We wish to thank all our customers and partners for their business and support over the last five years. Sometimes the journey is it's [sic] own reward.
>
> Employees of existing customers should contact their own HR department for information on the status of their leave of absence.
>
> The mailbox info@touchspeed.com will be monitored until 1 August 2004.
>
> We wish everyone the very best going forward.
>
> CMGT Inc.
> Touch Speed Technology Inc.

-12-

(*Id.*) The Court considered Exhibit No. 47 when it determined that Franco testified credibly that he resigned from CMGT in September 2003 and went to work for another employer in October or November of 2003. *CMGT*, 402 B.R. at 275. The Court finds that this document does not constitute newly discovered evidence, and it does not establish that Franco was referring to April 30, 2004 in his Affidavit. Spehar did not question Franco at trial with respect to Exhibit No. 47. Moreover, Robert Crandell and Ronald Given did not testify at trial. The Court cannot determine that this reference to CMGT having "ceased active operations as of April 30, 2004" is the same date to which Franco refers to in his Affidavit when CMGT "ceased operations."

Furthermore, the Court cannot determine whether this notice was ever viewed by Franco. Spehar had the opportunity at trial to clarify the actual date that CMGT "ceased operations" and elicit from Franco whether he remained an officer or director of CMGT at that time using Exhibit No. 47. Spehar was not only aware of this evidence, but chose not to provide a foundation for the exhibit or question Franco regarding the exhibit. Spehar's failure to elicit Franco's testimony on this issue does not make it newly discovered evidence.

Spehar has also submitted portions of the Fact Statement (Spehar Motion Ex. B), portions of the Response to the Fact Statement (*id.*), and the Plaintiff's Motion to Compel Production of Documents (Spehar Motion Ex. C), all of which were filed by the Trustee in the Malpractice Action. In his Response to the Fact Statement, the Trustee made the following assertions:

> (e) Given developed a conflicted strategy for responding to [a Spehar Capital] TRO that included: (i) lulling CMGT's shareholders and Spehar into believing that CMGT was dead, (ii) abandoning CMGT, and (iii) consummating a deal between Franco individually and Traunter's investment group. . . .

-13-

> (f) After [Spehar Capital] obtained its TRO, Given, Franco and
> Wong implemented Given's strategy. . . .

(Spehar Motion Ex. B, Response to Fact Statement at pp. 39-40, ¶¶ 127(e)-(f) & 129(e)-(f).)

The Court finds that these statements alone do not support Spehar's arguments that Franco did not resign in September of 2003 and that CMGT actually continued to operate in April of 2004. Again, Spehar seeks to combine the Trustee's assertion that the "strategy" included "lulling CMGT's shareholders and Spehar into believing that CMGT was dead" with evidence already submitted and weighed by the Court at trial. Spehar argues that this statement suggests that CMGT's corporate counsel's September 19, 2003 e-mail, Franco's April 10, 2004 letter, and Franco's April 12, 2004 e-mail were all part of implementing this strategy. Spehar asks this Court to infer that as part of this "strategy," Franco did not actually resign in September of 2003. However, Spehar has presented only portions of the Trustee's pleadings addressing factual questions in the Malpractice Action. As previously stated, the Court cannot determine the credibility of this incomplete evidence.

Furthermore, the portions of the Trustee's pleadings that have been presented also contain allegations suggesting that Ronald Given's "strategy" was designed to enable Franco to begin work as president and chief executive officer of another company (Newco) within the near future (Spehar Motion Ex. B, Fact Statement at p. 11, ¶¶ 48-49) and that Franco would resign and leave CMGT when the strategy was implemented (*id.*). These allegations are not inconsistent with Franco's testimony that he resigned in September of 2003 and took a position with another company. The allegation that the strategy included "lulling CMGT's shareholders and Spehar into believing that CMGT was dead" at most, may cast doubt on the accuracy of Ronald Given's statements in the e-mail. However, Spehar had the chance at trial to address the accuracy of

-14-

Ronald Given's statements in the e-mail. Spehar also had the opportunity to question Franco regarding his intentions at the time he sent the April 10, 2004 letter and the April 12, 2004 e-mail. Spehar failed to avail itself of those opportunities.

Spehar attempts to reargue that Franco remained a director, officer, or agent of CMGT at the time of service of the citations by "applying" the alleged new evidence to exhibits already weighed by the Court. (Spehar Motion Ex. D.) These exhibits are not newly discovered evidence. Spehar had a full opportunity to examine Franco concerning his involvement with CMGT and argue the evidentiary weight to be afforded these exhibits. Spehar never questioned Franco regarding his status as director of CMGT or whether he had ever resigned from that position. Franco admitted at trial that after his resignation and without payment, he completed "ministerial items to help wind down the company's affairs." (Trial Tr. p. 17 lines 15-22, Nov. 25, 2008.) Spehar did not question Franco regarding what "ministerial items" he completed after his resignation in September of 2003 and when those actions occurred. Moreover, the fact that Franco may have taken some actions in winding down the affairs of CMGT after his resignation in September of 2003 does not prove that Franco continued to act on behalf of CMGT in April of 2004. Thus, the Trustee's statement in the Response to Fact Statement that "the contemporaneous documents show that Franco continued to act on behalf of CMGT after September 19, 2003" is also not new evidence, and it is not inconsistent with Franco's testimony at trial. (Spehar Motion Ex. B, Response to Fact Statement ¶ 9.)

-15-

### B. The evidence offered by Spehar does not conflict with the Court's findings entered after trial

Spehar's motion contains several allegations that Franco has concealed evidence and provided intentionally false testimony at trial regarding his resignation from CMGT. Spehar argues that the Court relied on this testimony as the basis for finding that Franco had resigned and CMGT was not validly served with the citations to discover assets. Spehar goes so far as to argue that the alleged newly discovered evidence demonstrates that Franco committed fraud, if not perjury, upon this Court through intentionally evasive wording of his answers. "One commits perjury if, while under oath, he or she gives false testimony concerning a material matter with a willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. White*, 240 F.3d 656, 660 (7th Cir. 2001) (*citing United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). The evidence Spehar presented contains nothing that comes close to demonstrating that any of the testimony Franco provided was false. Spehar has not established any new facts about the relationship between Franco and CMGT at the time the citations were served on Franco in April of 2004. Isolated comments pulled from pleadings in another case that might contradict Franco's testimony at trial are not enough to establish newly discovered evidence or perjury. A review of this evidence shows that it merely verifies and corroborates facts already submitted to the Court before it entered judgment.

Spehar bore the burden of identifying evidence to support the inference that Franco remained an officer, director, or agent of CMGT at the time of service of the citations on Franco. Spehar does not get another opportunity based on evidence that may be beneficial, but is not newly discovered, simply because Spehar learned a fact late in the game that might help its chances. The factual information contained within Spehar's newly submitted documents could

-16-

have been learned earlier in these proceedings with reasonable diligence. Accordingly, Spehar's motion for relief from the judgment pursuant to Rule 60(b)(2) is denied.

## V. CONCLUSION

For the foregoing reasons, the Court denies Spehar's motion for relief from the judgment pursuant to Rule 60(b)(2).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 9/24/9

John H. Squires
United States Bankruptcy Judge

cc:   See attached Service List

## SERVICE LIST

### David E. Grochocinski, Trustee v. Spehar Capital, LLC
### Adversary Case No. 07 A 00838

David P. Lloyd, Esq.
Kathleen M. McGuire, Esq.
Grochocinski Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60462

John G. Lamb, Esq.
Russel G. Winick & Associates, P.C.
1220 Iroquois Avenue, Suite 100
Naperville, IL 60563

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604

The Honorable Robert W. Gettleman
U.S. District Court
219 S. Dearborn Street, Suite 1788
Chicago, IL 60604