# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 04 B 31669 |
| | ) | Chapter 7 |
| CMGT, INC., | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |
| DAVID E. GROCHOCINSKI, Trustee, | ) | Adversary No. 07 A 00838 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPEHAR CAPITAL, LLC, | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Spehar Capital, LLC ("Spehar") for sanctions and fees against David E. Grochocinski, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of CMGT, Inc. ("CMGT"), and his attorneys, Grochocinski, Grochocinski & Lloyd (the "Firm"). For the reasons set forth herein, the Court denies Spehar's motion to sanction the Trustee and the Firm.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

-2-

## II. FACTS AND BACKGROUND

A brief recitation of the history and background that led to the litigation in this adversary proceeding (the "Adversary Proceeding") is necessary. The Trustee and Spehar negotiated a post-petition financing agreement that outlined a plan whereby Spehar agreed to loan CMGT litigation funds for the Trustee to prosecute a malpractice claim on behalf of the estate.[1] The Trustee then filed a motion before this Court to allow him to enter into post-petition secured financing with Spehar. On September 2, 2005, the Court, adopting the language of the parties' agreed proposed order, entered an order (the "Financing Order") that provided in part that "Spehar has a valid and perfected lien on the proceeds of any . . . [malpractice action] recovery" and that the "Trustee shall take all reasonable and appropriate actions to void all liens that are asserted to be superior to Spehar's valid and perfected lien in CMGT's assets. . . ." (04 B 31669 Bankr. Docket No. 20 ¶¶ 6 & 8.)

---

[1] A malpractice suit was filed in the Circuit Court of Cook County, Illinois, and was removed to the District Court for the Northern District of Illinois. The action was assigned to Judge Virginia M. Kendall. In granting a motion for summary judgment filed by the defendant, Mayer Brown Rowe & Maw LLP ("Mayer Brown"), Judge Kendall found that the malpractice action was nothing more than a "deliberate manipulation of the judicial system" that was "designed to benefit only [Spehar]." *Grochocinski v. Mayer Brown Rowe & Maw LLP*, No. 06 C 5486, 2010 WL 1407256, at *17 (N.D. Ill. Mar. 31, 2010). That court further noted that the Trustee did not bring the malpractice action on behalf of the unsecured creditors of CMGT; instead, he "served as Spehar's puppet and brought the suit to benefit solely Spehar." *Id.* at *13. "Spehar was the puppetmaster and [the Trustee] his puppet." *Id.* at *12. Notwithstanding Judge Kendall's statements, the Court observes that during his administration of the CMGT bankruptcy estate and the prosecution of this Adversary Proceeding, the Trustee has not served as "Spehar's puppet."

In a subsequent decision with respect to Mayer Brown's motion for sanctions against the Trustee and his counsel, Judge Kendall declined to sanction the Trustee personally, finding that he did not willfully or deliberately violate his fiduciary duties. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 452 B.R. 676, 683-84 (N.D. Ill. 2011).

-3-

On July 26, 2007, the Trustee filed a motion to vacate the Financing Order because Spehar had not advanced the sums that it was required to under that Order. (04 B 31669 Bankr. Docket No. 80.) On August 30, 2007, the Trustee filed the Adversary Proceeding seeking to determine the validity, extent, and priority of Spehar's pre-petition lien. On October 5, 2007, the Court denied the Trustee's motion to vacate the Financing Order. (04 B 31669 Bankr. Docket No. 112.) The Court denied the motion on the bases that the Financing Order was a final and appealable order entered almost two years before the motion was filed and that there were no valid, timely grounds for vacating the Order under Federal Rule of Bankruptcy Procedure 9024 or Federal Rule of Civil Procedure 60(b). (Resp. to Mot. for Sanctions, Trustee Aff., Ex. No. 4.) Specifically, this Court noted that the denial of the motion to vacate the Financing Order was without prejudice to the Trustee's challenge of Spehar's lien in the Adversary Proceeding. (*Id.* at p. 10.)

The Adversary Proceeding moved forward with several pre-trial motions. First, Spehar filed a motion for judgment on the pleadings, which the Court denied. *Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.)*, 384 B.R. 497 (Bankr. N.D. Ill. 2008). In that decision, the Court noted that it was denying the motion "because material issues of fact exist with respect to whether Spehar had a valid lien on CMGT's personal property. . . ." *Id.* at 506. The Court also stated that "it does not appear beyond a doubt that the Trustee cannot prove any facts in support of his claims." *Id.* The parties then filed cross-motions for summary judgment which the Court also denied. *Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.)*, Bankr. No. 04 B 31669, Adv. No. 07 A 00838, 2008 WL 4767434 (Bankr. N.D. Ill. Oct. 30, 2008). Again, the Court reiterated that there were material issues of fact regarding whether Spehar's lien should be afforded secured status. *Id.* at *12. Further, the Court found issues of fact with respect to whether

-4-

the terms of the Financing Order constituted admissions by the Trustee that Spehar had a valid, pre-petition secured claim against CMGT's assets and whether the Trustee's position on the status of Spehar's lien claim was the product of mistake, either unilateral or bilateral. *Id.* at *14.

Thereafter, the Court held a two-day trial on November 24 and 25, 2008, and entered judgment on March 17, 2009 in favor of the Trustee on the basis that Spehar did not have a valid pre-petition citation lien on the assets of CMGT. *Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.)*, 402 B.R. 262 (Bankr. N.D. Ill. 2009). The Court subsequently denied Spehar's motion for relief from that judgment. *Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.)*, 417 B.R. 69 (Bankr. N.D. Ill. 2009). Spehar filed an appeal from the judgment in the District Court for the Northern District of Illinois, and the action was assigned to Judge Robert W. Gettleman.

On February 2, 2010, Judge Gettleman vacated the judgment and remanded the matter to this Court. *Spehar Capital, LLC v. Grochocinski (In re CMGT, Inc.)*, 424 B.R. 355 (N.D. Ill. 2010). Judge Gettleman specifically stated that "[w]hile it may not have been the intention of the bankruptcy court to make any factual findings in relation to Spehar's pre-petition lien, the language of the Financing Order unambiguously found that Spehar had a valid perfected lien, and the court never clarified a contrary intention in a timely amended order." *Id.* at 361. He further concluded that "[b]y allowing the Adversary Proceeding to be prosecuted by the Trustee, the bankruptcy court in effect vacated the Financing Order after ruling that there were insufficient reasons to do so under Rule 60(b)." *Id.* On March 26, 2010, the Court dismissed the Adversary Proceeding, including Spehar's counterclaim. (07 A 00838 Adv. Docket No. 253.) Spehar subsequently appealed the Court's dismissal of the Adversary Proceeding.

-5-

On March 21, 2011, Judge Gettleman issued a Memorandum Opinion and Order wherein he vacated this Court's order of dismissal and instructed the Court to reinstate the Adversary Proceeding in order to rule on Spehar's counterclaim and to allow Spehar to file a petition for sanctions and attorneys' fees. *Spehar Capital, LLC v. Grochocinski (In re CMGT, Inc.)*, No. 10 C 6330, 2011 WL 1044280 (N.D. Ill. Mar. 21, 2011). On July 21, 2011, the Court ruled on Spehar's counterclaim awarding it nominal damages. *Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.)*, Bankr. No. 04 B 31669, Adv. No. 07 A 00838, 2011 WL 2945768 (Bankr. N.D. Ill. July 21, 2011).

On July 12, 2011, just a few days before the Court ruled on its counterclaim, Spehar filed its motion for sanctions and fees against the Trustee and the Firm. Spehar contends that it should be awarded its attorneys' fees and costs in the sums of $231,685.46 and $14,805.42, respectively, for a total of $246,490.88[2] as sanctions against both the Trustee personally and the Firm for what Spehar maintains was reasonable and necessary to defend this allegedly frivolous Adversary Proceeding. According to Spehar, this action was nothing more than an impermissible attack on the Financing Order that had already determined the validity and scope of Spehar's secured lien. During the course of the litigation between Spehar and the Trustee in this Adversary Proceeding, Spehar engaged five law offices to perform services on its behalf at various stages of the litigation. Spehar attached to its motion affidavits from these five law offices and one from its

---

[2] This figure reflects a $36,942.23 reduction in the amount of fees sought based on a settlement that Spehar reached with one of its previous attorneys after this motion was filed. A more detailed explanation of that agreement is contained in footnote 3.

-6-

principal, Robert Gerard Spehar ("Mr. Spehar"), as well as supporting documentation for the

expenses and fees that were incurred.[3]

In response to the motion, the Trustee and the Firm contend that Spehar's only basis for

an award of fees is that it prevailed on the appeal before Judge Gettleman from the judgment

entered by this Court on March 17, 2009.[4] As such, they argue that Spehar is attempting to shift

---

[3] The first affidavit was submitted by Scott N. Schreiber of Stahl, Cowen, Crowley, Addis LLC. He represented Spehar at the commencement of the Adversary Proceeding and states that Spehar incurred fees and costs in the sum of $68,315.48. This amount is the result of a reduction after a compromise and settlement between Spehar and this law firm. The second affidavit was submitted by Kenneth A. Franklin ("Franklin") of Rodi Pollock Pettker Christian & Pramov. He represented Spehar in the continuation of the litigation, including the discovery portion of the suit. Franklin's affidavit sets forth that Spehar incurred fees and expenses totaling $31,704.42. Steven A. Klenda ("Klenda"), the sole member of Steven A. Klenda, LLC, submitted an affidavit that sets forth that he also represented Spehar in the Adversary Proceeding. The affidavit states that Spehar incurred attorneys' fees in the sum of $15,000. Following the work performed by Klenda, Spehar engaged the O'Brien Law Offices, P.C. Michael A. O'Brien ("O'Brien") states in his affidavit that Spehar incurred fees in the sum of $67,892 and expenses in the amount of $2,721,60, as well as $533.09 in interest for past due balances. O'Brien further explains that Spehar paid the firm $34,205.46, which leaves $36,942.23 in unpaid fees and expenses as of March 26, 2009. In its reply to the Trustee's response to the motion, Spehar explains that since the filing of the motion, O'Brien and Spehar finalized a settlement of their differences. As a result, Spehar voluntarily has reduced the sanctions request by $36,942.23–the amount that remained unpaid to O'Brien since March of 2009. An affidavit was also submitted by Mr. Spehar, the sole shareholder and officer of Spehar. Mr. Spehar asserts in the affidavit that he incurred expenses to proceed with mediation and litigation in this matter totaling $6,426.75. The final affidavit was submitted by John G. Lamb ("Lamb") of Russel G. Winick & Associates, P.C. He currently represents Spehar and began that representation when O'Brien withdrew from the matter. Lamb's services have related to post-judgment work. In his affidavit, he sets forth that Spehar has incurred attorneys' fees of $89,744 and expenses of $1,095.77 through the end of July 2011. Attached to the five attorneys' affidavits are time entries that reflect the work performed by those attorneys in connection with this Adversary Proceeding.

[4] The Trustee and the Firm raise the point in their response that Spehar never made the arguments before the Court that the Adversary Proceeding was an "end run" around the Court's decision denying the motion to vacate the Financing Order and that the Trustee was required to bring any challenge to Spehar's lien in a Federal Rule of Civil Procedure 60 motion. (Resp. to Mot. for Sanctions pp. 11-12.) According to the Trustee, after his review

-7-

its attorneys' fees in violation of the "American Rule." The Trustee and Kathleen M. McGuire

("McGuire"), an attorney with the Firm, executed affidavits wherein they explain the facts and

principles of bankruptcy law that they considered as they pursued and litigated this Adversary

Proceeding. The Court will further discuss these affidavits in connection with each basis under

which Spehar seeks sanctions. The parties waived their opportunity to submit additional evidence

into the record and rested on their briefs.[5]


## III. DISCUSSION

### A.    Sanctions Under Federal Rule of Bankruptcy Procedure 9011

First, Spehar seeks sanctions against the Trustee and the Firm under Federal Rule of

Bankruptcy Procedure 9011. Rule 9011 is modeled after Federal Rule of Civil Procedure 11 and

---

of all of the pleadings filed by Spehar in this Adversary Proceeding, Spehar's argument with
respect to Rule 60 was first raised in its brief on appeal before Judge Gettleman when it
sought to vacate the judgment. The Trustee maintains that Spehar prevailed on that appeal
because Judge Gettleman accepted an argument that was not made before this Court.
Further, the Trustee asserts that Judge Gettleman did not address the Court's findings that
the Trustee had not agreed that Spehar's claim would be allowed in CMGT's bankruptcy
case.
       This Court is not the proper forum to raise the issue of the propriety of Judge
Gettleman's decision. If the Trustee and the Firm took exception to the fact that the
judgment was vacated, they should have filed an appeal before the appropriate higher court.
Thus, the Court will not address this contention further.

[5] The Trustee and the Firm state in their response to the motion that "[s]hould the
Court determine that any sanctions should be imposed based on the amount of Spehar's
attorneys' fees and expenses, Trustee's Counsel requests that the Court set a hearing to
determine the amount of any such sanction." (Resp. to Mot. for Sanctions p. 17.) On July
22, 2011, at the presentation of Spehar's motion, the Court specifically asked the parties if
they wanted an evidentiary hearing. (Reply to Mot. for Sanctions Ex. A at p. 3.) Counsel
for the Trustee declined and stated, "I think the papers are going to be fine." (*Id.*) The
Trustee and the Firm therefore waived any right to an evidentiary hearing.

-8-

is the bankruptcy equivalent of Rule 11. *In re Excello Press, Inc.*, 967 F.2d 1109, 1111 (7th Cir.

1992). Rule 11 was amended in 1993 to add certain notice requirements, and the same

amendments were later made to Rule 9011, effective in 1997. Thus, courts frequently look to

cases that interpret Rule 11 when construing Rule 9011. *In re Famisaran*, 224 B.R. 886, 894

(Bankr. N.D. Ill. 1998). Further, some Rule 11 cases decided prior to the procedural amendment

are still applicable in analyzing Rule 9011 because the substantive provisions were not altered.

*See In re Collins*, 250 B.R. 645, 659 (Bankr. N.D. Ill. 2000); *State Bank of India v. Kaliana (In*

*re Kaliana)*, 207 B.R. 597, 601 (Bankr. N.D. Ill. 1997).

"The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood*

*Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004). The Rule is not intended to

function as a fee-shifting statute that requires the losing party to pay fees and costs. *Kaliana*, 207

B.R. at 601 (*citing Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989)

("Rule 11 is not a fee-shifting statute in the sense that the loser pays.")). Instead, the Rule focuses

on the conduct of the parties and not the results of the litigation. *Baermann v. Ryan (In re Ryan)*,

411 B.R. 609, 613 (Bankr. N.D. Ill. 2009). "Rule 11 sanctions are . . . to be granted sparingly"

and "should not be imposed lightly." *Lefkovitz v. Wagner*, 219 F.R.D. 592, 592-93 (N.D. Ill.

2004), *aff'd*, 395 F.3d 773 (7th Cir. 2005).

Rule 9011 provides in relevant part as follows:

> (b) Representations to the Court. By presenting to the court
> (whether by signing, filing, submitting, or later advocating) a
> petition, pleading, written motion, or other paper, an attorney or
> unrepresented party is certifying that to the best of the person's
> knowledge, information, and belief, formed after an inquiry
> reasonable under the circumstances,–

-9-

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.
    (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. . . . If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. . . .

·  ·  ·

-10-

> (2) Nature of Sanction; Limitations.  A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.   Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
>
> .   .   .
>
> (3) Order.  When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

Fed. R. Bankr. P. 9011(b) & (c).

Turning to the substance of the motion, the Court may impose sanctions against the Trustee and the Firm if it finds a violation of any one of the four subdivisions of Rule 9011(b). *See Collins*, 250 B.R. at 661.  Rule 9011(b) provides that upon presenting a document to the court, a party or his counsel represents that to the best of that person's knowledge, information, and belief, formed after a reasonable inquiry under the circumstances, such document is not (1) presented for any improper purpose, (2) based upon frivolous legal arguments, (3) without adequate evidentiary support for its allegations, and (4) without a basis for denials of fact.  *See* Fed. R. Bankr. P. 9011(b)(1)-(4).  "[T]he four subdivisions of Rule 9011(b) fall into two general categories: the 'frivolousness' clauses (or the 'objective component') and the 'improper purpose' clause (or the 'subjective component')."  *In re Am. Telecom Corp.*, 319 B.R. 857, 867 (Bankr.

-11-

N.D. Ill. 2004), *aff'd, Am. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc.*, No. 04 C

8053, 2005 WL 5705113 (N.D. Ill. Sept. 7, 2005).

The "improper purpose" clause under Rule 9011(b)(1) is directed at abusive litigation

practices and encompasses papers filed to cause unnecessary delay, to increase litigation costs,

or to harass. *Ryan*, 411 B.R. at 615; *Troost v. Kitchin (In re Kitchin)*, 327 B.R. 337, 366 (Bankr.

N.D. Ill. 2005). In determining whether a paper was interposed for any improper purpose, the

"critical question" is why the allegedly offending paper was filed. *In re Letourneau*, 422 B.R.

132, 138 (Bankr. N.D. Ill. 2010). In order to answer that question, courts must look to

"'objectively ascertainable circumstances that support an inference'" that the non-movant's

purpose for filing a paper was improper within the meaning of Rule 9011(b)(1). *Am. Telecom*,

319 B.R. at 872 (*quoting Collins*, 250 B.R. at 662); *see also Beeman v. Fiester*, 852 F.2d 206, 209

(7th Cir. 1988) ("Although the emphasis is on the party's motive for filing the paper, the party's

conduct is judged on an objective standard based on the circumstances of the case."), *abrogated*

*on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989). "A

paper interposed for any improper purpose is sanctionable whether or not it is supported by the

facts and the law, and no matter how careful the pre-filing investigation." *Kitchin*, 327 B.R. at

366.

Rule 9011(b)(2)-(4) requires a party's attorney to perform a reasonable preliminary

investigation of the facts and the applicable law before filing a paper in federal court. *Am*

*Telecom*, 319 B.R. at 867. With respect to the "frivolousness clauses," the relevant inquiry has

two prongs: (1) whether the attorney made a reasonable inquiry into the facts, and (2) whether

the attorney made a reasonable investigation of the law. *Raymond Prof'l Grp., Inc. v. William A.*

-12-

*Pope Co. (In re Raymond Prof'l Grp., Inc.)*, 420 B.R. 448, 462 (Bankr. N.D. Ill. 2009); *Home Sav. Ass'n of Kan. City, F.A. v. Woodstock Assocs. I, Inc. (In re Woodstock Assocs. I, Inc.)*, 121 B.R. 238, 242 (Bankr. N.D. Ill. 1990). "The legal papers an attorney files in any case must be grounded in both a nonfrivolous legal theory and well-founded factual contentions and/or denials that, at a minimum, have a reasonable possibility of having evidentiary support after further investigation and discovery." *Am. Telecom*, 319 B.R. at 867. Good faith alone is not enough to comply with the frivolousness clauses of Rule 9011. *Id.* Indeed, "Rule 9011 imposes an affirmative obligation upon counsel to conduct a reasonable inquiry into both the law and the facts before advancing a particular position to the court." *In re Martin*, 350 B.R. 812, 817 (Bankr. N.D. Ind. 2006).

In making the determination of whether a reasonable inquiry was made with respect to the facts of a case, courts must consider five factors: (1) whether the signer of the document had sufficient time for investigation; (2) the extent to which the attorney had to rely on the client for the factual foundation underlying the pleading; (3) whether the case was accepted from another attorney; (4) the complexity of the facts and the attorney's ability to perform a sufficient pre-filing investigation; and (5) whether discovery would have been beneficial to the development of the underlying facts. *Woodstock*, 121 B.R. at 242. In sum, the investigation of the facts must have been reasonable under the particular circumstances of the case. *Excello Press*, 967 F.2d at 1112-13. A pleading is well grounded in fact if it has some reasonable basis in fact. *Woodstock*, 121 B.R. at 242. On the other hand, a pleading is not well-grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known by the attorney signing the

-13-

document. *Id.* Nonetheless, the Rule does not require investigation to the point of absolute certainty. *Kaliana*, 207 B.R. at 601.

The imposition of sanctions under Rule 9011 is discretionary rather than mandatory. *In re Dental Profile, Inc.*, 446 B.R. 885, 903 (Bankr. N.D. Ill. 2011) (*citing In re Generes*, 69 F.3d 821, 827 (7th Cir. 1995)). Among the sanctions that may be imposed for violating the Rule are fines payable to the court clerk, an award of attorneys' fees and costs to the sanctioned party's opponent, the disgorgement of fees paid to the sanctioned attorney, an injunction prohibiting specific types of future filings, mandatory legal education, stricken pleadings, referrals to disciplinary bodies, and reprimands either on or off the record. *Am Telecom*, 319 B.R. at 873. In determining the appropriate sanction, courts may consider Rule 9011's multiple purposes of punishment, deterrence, and compensation; the severity of the violation; any resultant delay; and a sanctioned party's ability to pay the sanctions. *Id.*

Under Rule 9011(c)(1), "sanctions proceedings may be initiated in two ways, by motion or at the initiative of the trial court." *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999). When sanctions are requested upon a party's motion pursuant to Rule 9011(c)(1)(A), two requirements must be met: (1) the motion must be made separate and apart from other motions or requests and "[must] describe the specific conduct alleged to violate subdivision (b)[,]" and (2) "the motion may not be presented to the court unless, within twenty-one days of service, the non-movant has not withdrawn or corrected the challenged behavior." *Id.*

The first requirement–a separate motion–prevents the sanctions request "'from being tacked onto or buried in motions on the merits, such as motions to dismiss or for summary judgment.'" *Kitchin*, 327 B.R. at 362 (*quoting Ridder v. Springfield*, 109 F.3d 288, 294 n.7 (6th

-14-

Cir. 1997)). A court abuses its discretion when it permits a motion for sanctions to be made in conjunction with another motion. *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1058 (7th Cir. 1998). Here, Spehar seeks sanctions against the Trustee and the Firm by way of separate motion. Thus, the Court finds that the "separateness" requirement under Rule 9011(c)(1)(A) has been met. *See Kitchin*, 327 B.R. at 362-63.

With respect to the second requirement, a party seeking sanctions must serve the motion on the offending party twenty-one days before filing it with the court. *Corley*, 388 F.3d at 1012. This requirement has been referred to as the "safe harbor" provision because it gives the offending party a twenty-one day window, or "safe harbor," within which to withdraw or correct the offending pleading. *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 552 (7th Cir. 2011); *Divane*, 200 F.3d at 1025 (explaining that Rule 11(c) was designed to ensure due process and give the potentially offending party a "full and fair opportunity to respond and show cause before sanctions are imposed); *Kitchin*, 327 B.R. at 359-60 (noting that the purpose of Rule 9011(c)(1)(A) is to give the offending party the opportunity, within twenty-one days after service of the motion, to withdraw the offending pleading and thereby escape sanctions). The provision "serves the laudable purpose of requiring litigants to dispose of frivolous claims without judicial involvement." *Kitchin*, 327 B.R. at 361. The safe harbor provision is a mandatory procedural prerequisite, and sanctions imposed without compliance are improper. *In re McNichols*, 258 B.R. 892, 902-03 (Bankr. N.D. Ill. 2001). If a court sanctions by motion without adhering to the twenty-one day safe harbor it abuses its discretion. *Divane*, 200 F.3d at 1025.

In sum, a motion for Rule 9011 sanctions may not be filed with the court until the opposing party has had twenty-one days to decide whether to withdraw the allegedly offending

-15-

pleading. *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir. 2003). Only if the adverse

party maintains its position may the movant file the motion and request the sanctions. *Id.*

The Court finds that the instant motion fails to comply with the safe harbor provision.

Spehar has not shown that it sent a copy of the motion to either the Trustee or the Firm prior to

filing the motion with the Court on July 12, 2011. Instead, Spehar attached to its motion a copy

of a redacted letter that was captioned "CONFIDENTIAL SETTLEMENT COMMUNICATION,"

which it sent to the Firm on July 2, 2008. (Mot. for Sanctions, Ex. A.) The letter states that "the

Trustee is the cause of the underlying dispute" and that the "[c]omplaint is frivolous, having a

very low probability of succeeding." (*Id.*) "A warning letter does not trigger the safe harbor

provision of Rule 11, and further may not substitute formal service of the Rule 11 motion."

*Dearborn Fin. Servs. Corp. v. Heath*, No. 98 CV 5222, 1999 WL 1011860, at *5 (N.D. Ill. Sept.

30, 1999); *see also Harding Univ. v. Consulting Servs. Grp., L.P.*, 48 F. Supp. 2d 765, 770 (N.D.

Ill. 1999). This alleged settlement communication does not constitute a warning letter for

purposes of Rule 9011.

The Seventh Circuit has stated that a letter informing the opposing party of the intent to

seek sanctions and the basis for the imposition of sanctions may be sufficient under the Rule. *See

Matrix IV*, 649 F.3d at 552-53. The letter submitted by Spehar, however, does not inform either

the Trustee or the Firm that Spehar intends to seek sanctions against them. Nor does the letter

give the Trustee the opportunity to withdraw the complaint as required by the safe harbor

provision. Moreover, the letter does not contain any reference whatsoever to Spehar seeking Rule

9011 sanctions against either the Trustee or the Firm. Rather, it merely states that the filing of

the complaint is "frivolous" and has a "very low probability of succeeding." (Mot. for Sanctions,

-16-

Ex. A.) These recitations did not properly notify the Trustee or the Firm of Spehar's intention to seek sanctions. The safe harbor provision is not "merely an empty formality." *Divane*, 200 F.3d at 1026.

Even though the Court has found that the motion fails to comply with the safe harbor provision of Rule 9011, it will address the merits of the motion. Spehar argues that the Adversary Proceeding, which was filed by the Firm on behalf of the Trustee, warrants sanctions under Rule 9011 because the Financing Order set forth that Spehar had a valid pre-petition lien and, as such, the Adversary Proceeding is not reasonably based in law or fact. Specifically, Spehar proceeds under subsections (b)(1), (b)(2), and (b)(3) of Rule 9011 arguing that the Adversary Proceeding was filed for an improper purpose, contains frivolous legal arguments, and includes allegations for which there is inadequate evidentiary support. *See* Fed. R. Bankr. P. 9011(b)(1)-(3).

The real issue at bar is not one of fact but, rather, one of law–the proper interpretation of the Financing Order. A distinction must be drawn between factual allegations and legal conclusions. Spehar does not dispute any factual allegations, but only the legal conclusion to be drawn from the facts. Therefore, the Court will address only subsections (b)(1) and (b)(2) of Rule 9011.

Spehar argues that the Adversary Proceeding was a collateral attack on a final, unappealable order and, thus, frivolous because it had no reasonable basis in law and no reasonable probability of succeeding. According to Spehar, it had to "endure frivolous, needless[,] and unnecessary litigation, at the intentional hands of the Trustee" who sought to "renege on his original obligations under the . . . Financing Order, and through the processing of the intentional and definitionally frivolous pleadings of the Trustee's counsel who asserted

-17-

pleadings that continually sought to collaterally attack" that Financing Order. (Mot. for Sanctions p. 10.) Spehar contends that this attack on the Financing Order constituted bad faith by the Trustee and the Firm.

The Court finds that the Trustee and the Firm pursued the Adversary Proceeding under a sound legal basis. The Trustee in his affidavit and McGuire in her affidavit assert in a very comprehensive manner the rationale for filing and pursuing the Adversary Proceeding. Specifically, the Trustee avers that he filed the Adversary Proceeding because there was "a bona fide dispute concerning the validity of Spehar's lien." (Resp. to Mot. for Sanctions, Trustee Aff. ¶ 61.) The Trustee pointedly states that had this Court not explicitly authorized him to continue with the Adversary Proceeding when it denied his motion to vacate the Financing Order, he would not have pursued the litigation. (*Id.*) In fact, according to the Trustee, he believed that other creditors could have argued that he breached a fiduciary duty owed to them if he had not continued with the litigation. (*Id.* at ¶¶ 61 & 62. )

Further, the Trustee explains that he continued to prosecute the Adversary Proceeding because the Court ruled that there were material issues of fact regarding whether Spehar had a valid lien. (*Id.* at ¶ 62.) Indeed, the Court held in both its decision denying Spehar's motion for judgment on the pleadings and in its opinion denying the parties' cross-motions for summary judgment that there were material issues of fact. *See CMGT*, 2008 WL 4767434, at *12-14 (reiterating that material issues of fact exist regarding whether Spehar's lien should be afforded secured status; whether the terms of the Financing Order constituted admissions by the Trustee that Spehar would have a valid, pre-petition secured claim against CMGT's assets; and whether the Trustee's position on the status of Spehar's lien claim was the product of mistake, either

-18-

unilateral or bilateral); *CMGT*, 384 B.R. at 506 (stating that "material issues of fact exist with respect to whether Spehar had a valid lien on CMGT's personal property. . . .").

McGuire, who has worked primarily on Chapter 7 cases as counsel to the Trustee since early 2005, avers in her affidavit that she interpreted the Court's determination that the denial of the motion to vacate the Financing Order was without prejudice as to the continuation of the Adversary Proceeding as an exercise of the Court's discretion under Federal Rule of Civil Procedure 60(d)(1)[6] to entertain an independent action to relieve a party from a judgment or order. (Resp. to Mot. for Sanctions, McGuire Aff. ¶¶ 3 & 27.)  Since the motion to vacate was denied, McGuire states that she has found nothing to suggest that the continued prosecution of the Adversary Proceeding was frivolous or unwarranted. (*Id.* at ¶ 28.)  Additionally, she contends that because the Court had determined that there were questions of fact regarding the validity of Spehar's lien and whether the Trustee had agreed to allow that lien, abandonment of the Adversary Proceeding by the Trustee would have given rise to complaints from CMGT's other creditors that the Trustee had breached fiduciary duties he owed to them. (*Id.* at ¶ 37.)

Based upon the affidavits of McGuire and the Trustee, the Court finds that the Trustee and the Firm acted in an objectively reasonable manner in filing and pursing the Adversary Proceeding and that sanctions under Rule 9011 are not appropriate.  The filing of the Adversary Proceeding was not frivolous or for an improper purpose.  Clearly, the Trustee filed the Adversary Proceeding because he believed that Spehar did not have a valid pre-petition lien on CMGT's assets.  There was no evidence introduced by Spehar to show that the Trustee was motivated by a desire to

---

[6] Rule 60(d)(1) provides that the Rule does not limit a court's power to "entertain an independent action to relieve a party from a judgment, order, or proceeding[.]" Fed. R. Civ. P. 60(d)(1).

-19-

harass, increase litigation costs, or cause unnecessary delay.  Further, the Court finds that the

Trustee made a reasonable investigation into both the facts and the law before filing the Adversary

Proceeding.  The Trustee explained that at the time he negotiated the Financing Agreement, he

relied on representations made by Spehar's principal that Spehar had a valid pre-petition lien, but

at that point, the Trustee had not made any determination about the validity and extent of that lien.

(Resp. to Mot. for Sanctions, Trustee Aff. ¶ 32.)  According to the Trustee, he believed that the

Financing Agreement served the limited purpose of providing "a small post-petition funding" for

case administration while special counsel analyzed the potential malpractice action.  (*Id.*)  During

his discussions with Spehar's principal, the Trustee realized that Spehar interpreted the provisions

of the Financing Order as having far-reaching implications beyond a small post-petition financing

to facilitate the filing of the malpractice action.  (*Id.* at ¶ 39.)  Rather, Spehar believed that the

Financing Order allowed it a secured claim for over $17 million.  (*Id.*)  The Trustee avers that he

did not intend the Financing Order to be as far-reaching as Spehar asserted it was.  (*Id.* at ¶ 42.)

As a result, the Trustee filed the motion to vacate the Financing Order.  (*Id.* at ¶ 43.)  During this

time, the Trustee investigated and learned that Spehar had not properly served its citation on

CMGT.  (*Id.* at ¶ 47.)  Because his investigation indicated that Spehar's lien might be invalid, the

Trustee explains, he filed the Adversary Proceeding.  (*Id.*)

Under 11 U.S.C. § 704(a)(5), a trustee's duties include examining proofs of claim and

objecting to the allowance of any claim that is improper.  According to the Trustee, he typically

waits until there are assets in an estate before he challenges claims.  (*Id.* at ¶ 14.)  After the

Financing Order was entered, the Trustee investigated Spehar's claim and learned that Spehar had

not properly served its citation on CMGT.  (*Id.* at ¶ 47.)  Based upon this investigation, which

-20-

indicated that Spehar's lien could be invalid, the Trustee then filed the Adversary Proceeding. (*Id.*)

Given the information before the Trustee, the Court finds that a reasonable attorney would have pursued the same course of action. Upon learning that Spehar's lien might be invalid, the Trustee filed the Adversary Proceeding to challenge that lien. The Trustee and Spehar had different interpretations of the language in the Financing Order. The Trustee did not advocate a claim that had no legal basis. Rather, he ultimately prevailed on the merits of the action before this Court in which it was found that Spehar's claimed citation lien was invalid. The legal contentions made in the Adversary Proceeding were not utterly implausible nor can they be characterized as abusive or egregious. Instead, the Trustee's actions were reasonable under § 704(a)(5) of the Code.

Moreover, the fact that the judgment was vacated on Spehar's appeal before Judge Gettleman does not render the Trustee's underlying claim in the Adversary Proceeding against Spehar groundless and, therefore, sanctions appropriate. *See Corley*, 388 F.3d at 1014. The failure of a party to prevail on the merits of a legal contention or the entire case does not justify a finding of frivolousness. *Lerch v. Boyer*, 929 F. Supp. 319, 324 (N.D. Ind. 1996).

The Court views Spehar's motion as an impermissible attempt to shift its attorneys' fees to the Trustee and the Firm.[7] Rule 9011 is not intended to function as a fee-shifting statute that requires the losing party to pay fees and costs. *See Mars Steel*, 880 F.2d at 932. The Court will

---

[7] The CMGT estate has no assets at this point (Resp. to Mot. for Sanctions, Trustee Aff. ¶ 59) unless the Seventh Circuit reverses Judge Kendall's summary judgment in favor of Mayer Brown. Thus, it is unlikely that any creditor will receive a dividend distribution.

-21-

not condone this action. *See Kaliana*, 207 B.R. at 603-04. "Discouraging frivolous litigation–not

punishing litigants–is Rule 11's purpose." *Brown v. Pierce Mfg., Inc.*,169 F.R.D. 118, 119 (E.D.

Wis. 1996). The appropriate focus here is the conduct of the Trustee and the Firm, not the results

of the litigation. *See Ryan*, 411 B.R. at 613. Neither the Trustee nor the Firm exhibited improper

or inappropriate behavior before this Court during the course of the litigation with Spehar.

Accordingly, the Court denies Spehar's request for sanctions under Rule 9011.

### B.      Sanctions Under 28 U.S.C. § 1927

Next, Spehar seeks sanctions against the Trustee and the Firm[8] based on 28 U.S.C. § 1927,

which provides as follows:

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any Territory thereof who so
> multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees reasonably incurred
> because of such conduct.

28 U.S.C. § 1927.[9]

Attorneys can be sanctioned under § 1927 if they unreasonably and vexatiously multiply

proceedings in any case. *Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of the Fox*

*Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998); *In re Volpert*, 110 F.3d 494,

---

[8] Unlike Rule 9011, § 1927 provides for sanctions against only individual attorneys, not law firms. *United Stars Indus., Inc. v. Plastech Engineered Prods., Inc.*, 525 F.3d 605, 609 (7th Cir. 2008); *Claiborne v. Wisdom*, 414 F.3d 715, 723 (7th Cir. 2005). Therefore, the Court will not discuss sanctions under § 1927 as to the Firm.

[9] Even though Spehar does not specifically request sanctions under § 1927, it argues that the Trustee and the Firm vexatiously and unreasonably multiplied the litigation against it. Moreover, Spehar cites to *In re Volpert*, 110 F.3d 494 (7th Cir. 1997), which states that attorneys can be sanctioned under § 1927. Therefore, in order to cover all points raised by Spehar, the Court will address sanctions under this statute.

-22-

500-01 (7th Cir. 1997). The Seventh Circuit has held that a bankruptcy judge can sanction an

attorney under the authority of 28 U.S.C. § 1927. *Adair v. Sherman*, 230 F.3d 890, 895 n.8 (7th

Cir. 2000) (*citing Volpert*). A court has discretion to impose § 1927 sanctions

> when an attorney has acted in an objectively unreasonable manner
> by engaging in serious and studied disregard for the orderly
> process of justice, pursued a claim that is without a plausible legal
> or factual basis and lacking in justification, or pursue[d] a path that
> a reasonably careful attorney would have known, after appropriate
> inquiry, to be unsound[.]

*The Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal quotations

and citations omitted). Section 1927 sets a higher standard for sanctions than other sources, such

as Rule 11. *United Stars*, 525 F.3d at 610.

The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys

and to ensure that those who create unnecessary costs also bear them." *Riddle & Assocs., P.C.*

*v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (internal quotation omitted). Either subjective or

objective bad faith is a prerequisite for awarding sanctions under this section. *Dal Pozzo v. Basic*

*Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). "Subjective bad faith, the more difficult type of

bad faith to prove, is not always necessary. Subjective bad faith must be shown only if the

conduct under consideration had an objectively colorable basis." *Id.* (citation omitted). The

standard for objective bad faith, on the other hand, "does not require a finding of malice or ill

will; reckless indifference to the law will qualify." *Id.*

The Court finds no grounds to award sanctions against the Trustee under § 1927.

Sanctions would be appropriate only in the face of unreasonable and vexatious conduct, which

was not present when the Trustee filed the Adversary Proceeding. The Court has already

determined that Spehar did not present any evidence that the Trustee filed the Adversary

-23-

Proceeding for an improper purpose, based on frivolous legal arguments, or without adequate

evidentiary support. Spehar also failed to present any evidence that the Trustee intentionally

abused the judicial process in an unreasonable and vexatious manner. Thus, the Court declines

to sanction the Trustee under § 1927.

### C.    Sanctions Under 11 U.S.C. § 105(a) and the Court's Inherent Authority

Spehar also seeks to have sanctions imposed on the Trustee and the Firm under 11 U.S.C.

§ 105(a).[10]   Specifically, Spehar maintains that the Trustee vexatiously multiplied litigation

against it by filing the Adversary Proceeding in the face of the "unambiguous nature of the

Financing Order, and the clarity of the incorporated Sharing Agreement. . . ." (Mot. for Sanctions

p. 8.)

Section 105(a) confers both statutory and inherent authority upon bankruptcy courts to

impose sanctions. *In re Dental Profile, Inc.*, 446 B.R. 885, 906 (Bankr. N.D. Ill. 2011);

*Liquidating Grantor's Trust of Proteva, Inc. v. Finova Capital Corp. (In re Proteva, Inc.)*, 271

B.R. 569, 573 (Bankr. N.D. Ill. 2001). The statute provides as follows:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a).

---

[10]   While Spehar does not specifically invoke § 105(a), it cites to *In re Volpert*, 110 F.3d 494 (7th Cir. 1997), which found that the bankruptcy court has the power to sanction an attorney under this provision. Thus, the Court will address its inherent authority to impose sanctions under § 105(a).

-24-

The Seventh Circuit in *In re Volpert*, 110 F.3d 494 (7th Cir. 1997), stated that the

bankruptcy court has the power under § 105(a) to sanction conduct that abuses the judicial

process, including conduct that unreasonably and vexatiously multiplies proceedings before the

court. *Id.* at 500. Section 105(a) gives the Court "broad powers . . . to implement the provisions

of Title 11 and to prevent an abuse of the bankruptcy process." *Id.* Despite the open-ended

language of § 105(a), however, courts must exercise caution to limit the circumstances under

which the statute is used. *Disch v. Rasmussen*, 417 F.3d 769, 777 (7th Cir. 2005). "Otherwise,

there is a real risk that more particular restrictions found throughout the Code would amount to

nothing, because the court could always use the residual equitable authority of § 105(a)." *Id.*

Section 105 is a "means to enforce the Code rather that an independent source of substantive

authority," *In re UAL Corp.*, 412 F.3d 775, 778 (7th Cir. 2005), and a ruling under § 105(a) must

"be exercised within the confines of the [B]ankruptcy [C]ode," *Gouveia v. Tazbir*, 37 F.3d 295,

300 (7th Cir. 1994). *See also Vill. of Rosemont v. Jaffe*, 482 F.3d 926, 935 (7th Cir. 2007) (stating

that § 105(a) affords bankruptcy courts less discretion than meets the eye and that a court's

discretion is limited). Thus, in imposing sanctions, a court should ordinarily rely on authority

conferred by statutes and procedural rules, rather than on its inherent power, if the sources of

authority serve the purposes of the court. *In re Rimsat, Ltd.*, 212 F.3d 1039, 1048 (7th Cir. 2000)

(*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)).

"Sanctions are justified under § 105(a) where the sanctioning court has clearly found that

a litigant intentionally abused the judicial process in an unreasonable and vexatious manner."

*Collins*, 250 B.R. at 657 (internal quotation omitted). Where a party unreasonably prolongs

-25-

litigation, it is within the court's inherent equitable authority to require that party to pay attorneys'

fees. *In re Eliscu*, 139 B.R. 883, 886 (N.D. Ill. 1992).

The Court finds that Spehar has not established that the Trustee or the Firm intentionally

abused the judicial process in an unreasonable or vexatious manner; that they were motivated by

a desire to delay Spehar; that they unreasonably prolonged the litigation; or that they abused the

judicial process by pursuing the Adversary Proceeding.   Rather, for the reasons previously

articulated, the Trustee pursued the action against Spehar to challenge the validity of its pre-

petition lien.  Indeed, the Trustee prevailed before this Court and was awarded a judgment in his

favor.  The mere fact that Judge Gettleman vacated the judgment on Spehar's appeal does not

mean, ipso facto, that the Trustee and the Firm somehow intentionally abused the judicial process.

Based upon his affidavit, the Court finds that the Trustee was fulfilling his fiduciary obligations

to the CMGT estate and its creditors.  The Trustee pursued the Adversary Proceeding on the good

faith basis that the Financing Order did not determine the validity and priority of Spehar's pre-

petition lien.

In sum, there is no evidence of abuse of process by either the Trustee or the Firm.  As

such, sanctions are denied under § 105(a) and the Court's inherent authority.

**D.     Sanctions Under *Maxwell v. KPMG LLP***

Lastly, Spehar seeks sanctions against the Trustee and the Firm based on *Maxwell v.

KPMG LLP*, 520 F.3d 713 (7th Cir. 2008).  In that case, the Seventh Circuit stated that frivolous

lawsuits are "forbidden."  *Id.* at 719.  The court articulated the test for determining whether an

action is frivolous and stated that if the probability of a lawsuit succeeding is very low, then that

action is indeed frivolous.  *Id.*  In a subsequent decision, the Seventh Circuit noted that a Chapter

-26-

7 trustee is "personally liable only if he willfully and deliberately violate[s] his fiduciary duties."
*Maxwell v. KPMG LLP*, No. 07-2819, 2008 WL 6140730, at *4 (7th Cir. Aug. 19, 2008); *see also
In re Chi. Pac. Corp.*, 773 F.2d 909, 915 (7th Cir. 1985) (concluding that the bankruptcy trustee
had not engaged in willful or deliberate misconduct and, thus, could not be personally liable for
sanctions).

Spehar argues that the Adversary Proceeding was frivolous as a matter of law because
Judge Gettleman found that the Court erred when it "entertained the Adversary Proceeding."
*CMGT*, 424 B.R. at 361. The Court rejects Spehar's contention. The Trustee succeeded on the
merits of the Adversary Proceeding after a trial, and the Court entered judgment in his favor.
Hence, the probability of the lawsuit's success was high, and, indeed, the Trustee prevailed. That
Judge Gettleman disagreed with this Court and its interpretation of the Financing Order and
thereby vacated the judgment entered in favor of the Trustee does not render the Adversary
Proceeding frivolous as a matter of law. *See Lerch*, 929 F. Supp. at 324 (stating that the failure
of a party to prevail on the merits of a legal contention or the entire case does not justify a finding
of frivolousness).

Next, Spehar asserts that the Adversary Proceeding was an intentional, willful action
whose purpose was an unlawful, impermissible end-run around the Financing Order. According
to Spehar, because Judge Gettleman concluded that the Adversary Proceeding should never have
proceeded, the action was frivolous as defined by the *Maxwell* court. The Court finds that Spehar
failed to introduce any evidence of bad faith or willful or deliberate fiduciary misconduct on the
part of the Trustee or the Firm. To the contrary, as set forth in his affidavit, the Trustee explains
that he believed that there was a bona fide dispute regarding the validity of Spehar's lien and that

-27-

this Court's rulings, including denial of Spehar's motion for judgment on the pleadings and the cross-motions for summary judgment, obligated him to continue with the Adversary Proceeding. (Resp. to Mot. for Sanctions, Trustee Aff. ¶¶ 61 & 62.)  According to the Trustee, he was fulfilling his duties to the creditors of the CMGT estate by pursuing the Adversary Proceeding, and had he abandoned the action, the other creditors might have argued that he was breaching his fiduciary duties. (*Id.*)  Along those same lines, McGuire states in her affidavit that based on this Court's decision that there were questions of fact regarding the validity of Spehar's lien and whether the Trustee had agreed to allow that lien, it would not have been proper for the Trustee to abandon the Adversary Proceeding, and that such an action on his part would have been cause for complaint by the other creditors of CMGT. (Resp. to Mot. for Sanctions, McGuire Aff. ¶ 37.)

The Court acknowledges that Judge Gettleman concluded that the Adversary Proceeding should not have been allowed to proceed and that it was an impermissible end-run around the Financing Order.  Nevertheless, the Court told the Trustee at the hearing on the motion to vacate the Financing Order that the denial of that motion was without prejudice to the continuation of the Adversary Proceeding.  (Resp. to Mot. for Sanctions, Trustee Aff., Ex. No. 4 at p. 10.) Further, in ruling on the motion for judgment on the pleadings and the cross-motions for summary judgment, the Court found that there were material issues of fact regarding the interpretation of the Financing Order and whether Spehar had a valid, pre-petition lien. *CMGT*, 2008 WL 4767434, at *12-14; *CMGT*, 384 B.R. at 506.  Indeed, the Court allowed the Adversary Proceeding to move forward and granted judgment in favor of the Trustee, even though Judge Gettleman later found that the action should not have been allowed.  The Court will not sanction

-28-

the Trustee and the Firm because it agreed with the Trustee's position, but ultimately was reversed by a higher court.

Based upon the affidavits of the Trustee and McGuire and the lack of any evidence proffered by Spehar to show bad faith or willful or deliberate fiduciary misconduct on the part of the Trustee or the Firm, the Court will not sanction the Trustee or the Firm.[11]

## IV. CONCLUSION

For the foregoing reasons, the Court denies Spehar's motion to sanction the Trustee and the Firm.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rules of Bankruptcy Procedure 5003 and 9021.

ENTERED:

DATE: _10/18/11_                    _John H. Squires_
                                    John H. Squires
                                    United States Bankruptcy Judge

cc:     See attached Service List

---

[11] Because the Court has denied Spehar's sanctions request, it need not address the reasonableness and necessity of the fees and expenses that Spehar incurred over the course of the litigation in this Adversary Proceeding.

## SERVICE LIST

### David E. Grochocinski, Trustee v. Spehar Capital, LLC
**Adversary Case No. 07 A 00838**

Kathleen M. McGuire, Esq.
Grochocinski, Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60462

John G. Lamb, Esq.
Russell G. Winick & Associates, P.C.
1220 Iroquois Avenue, Suite 100
Naperville, IL 60563

Patrick S. Layng, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604

The Honorable Robert W. Gettleman
U.S. District Court
219 S. Dearborn Street, Suite 1788
Chicago, IL 60604